## STATE OF CONNECTICUT v. JOSEPH KELLY
## (AC 26738)

Bishop, McLachlan and Lavine, Js.

---

Argued November 28, 2007—officially released March 18, 2008

*Cynthia M. Barlow*, assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, *Robin Lipsky*, former senior assistant state's attorney, and *Proloy K. Das*, former assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Joseph Kelly, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that (1) the trial court improperly admitted hearsay statements through the testimony of the victim's mother, (2) the court improperly admitted constancy of accusation testimony from two witnesses before the victim had testified, (3) the court improperly admitted a letter the victim had written to her mother as constancy of accusation evidence and (4) the state's prosecutorial improprieties during closing arguments deprived him of his due process right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1993, the victim, A, and her brother, Joe, Jr.,

lived in an apartment in Waterbury with their mother, G, and father, Joe, Sr.[1] In the early morning hours of Thanksgiving Day, Joe, Sr., died in an automobile accident. At the time of their father's death, A was five years old and Joe, Jr., was seven years old. G and her children continued to reside in the Waterbury apartment.

The defendant had been a close friend of Joe, Sr., and G for a number of years. Shortly after Joe, Sr., died, the defendant began to spend more time with the family at the apartment and eventually occupied a room in the basement. G did not work outside of the home for a period of time after her husband's death. Sometime in 1994 or 1995, when A was about seven years old, G decided to return to employment. The defendant offered to supervise A and Joe, Jr., for an hour or two each weekday, from the time they returned home from school until G returned home from work. That arrangement lasted for almost one year. During those months, A often was alone in the apartment with the defendant, and she claimed that he sexually assaulted her on numerous occasions at that time. She told no one of the abuse.

Sometime in 1995, after A had completed the third grade, G and her family moved from Waterbury to Rhode Island. The defendant left the Waterbury apartment shortly before the move. A testified that all of the sexual assaults took place when she lived in the Waterbury apartment and that she did not see the defendant at any time after the family moved to Rhode Island. G remained friends with the defendant and continued to see him occasionally, the last time being at his wedding several years before the trial.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

In September, 2003, after watching a movie involving sexual abuse, A decided that she wanted to tell her mother about the defendant's actions. A wrote G a letter, in which she disclosed that the defendant had sexually abused her seven years earlier, and left it in an envelope on the kitchen table. When G returned home from work that day, she read the letter and discussed its contents with A. G then called the Waterbury police department and made arrangements to meet with Detective Anthony Rickevicius. Rickevicius, who was assigned to the sexual assault unit, met with G and A in October, 2003. As a result of that meeting, an investigation was commenced, and the defendant was arrested and charged with sexual assault in the first degree and risk of injury to a child.

On March 23, 2005, the defendant filed a motion in limine requesting that the court limit the admissibility of the letter A wrote to G in September, 2003, by ordering the redaction of any portions that could " 'arouse the emotions and sympathies of the jury' " in favor of A. On the first day of trial, prior to the testimony of any witness, the court heard argument from counsel as to proposed redactions and granted the defendant's motion in part. The case was then tried before the jury on March 30 and April 4, 2005.

The jury heard testimony from G, Rickevicius, A and Howard Krieger, an expert in the treatment of sexual abuse victims, who were all witnesses for the state. The defendant called no witnesses of his own, although he cross-examined the state's witnesses. He submitted a photograph of the Waterbury apartment as his only exhibit. On April 5, 2005, the jury returned a verdict finding the defendant guilty of the crimes charged. The court accepted the verdict and sentenced the defendant to a total effective term of eighteen years incarceration. This appeal followed.

I

The defendant first claims that the court improperly admitted hearsay statements of A and Joe, Jr., through the testimony of G on redirect examination. Specifically, the defendant challenges the court's finding that he "opened the door" to that testimony and argues that the evidence was irrelevant and prejudicial.

After direct examination by the state, G was cross-examined by defense counsel about her family's relationship with the defendant when he stayed at the Waterbury apartment. Two inquiries were made concerning her belief as to the defendant's trustworthiness during that period of time. At one point, defense counsel asked G: "[The defendant] was a trusted friend, and there was never any, in your observation looking back, any reason for you to think anything unusual ever happened in your household when you weren't there?" G responded, "No." Immediately prior to the conclusion of his cross-examination, defense counsel asked G the following question: "Back when [the defendant] was living—well, coming to stay with your family back in the 90s, 93, 94, did you think that [he] would harm your children in any way?" G responded, "No, I didn't think he would, no."

The first question the prosecutor asked G on redirect examination was as follows: "[Defense counsel] asked you if back in 1993 to [19]97 you thought . . . the defendant would harm your children, correct? You said no. Knowing what you know now, would your opinion be different?" After G said, "yes," the prosecutor asked her the reason for that change in opinion. Defense counsel objected on the ground that the testimony would violate the constancy of accusation doctrine. The court responded: "You opened that door." G then proceeded to explain why her opinion had changed.

G testified that Joe, Jr., subsequently told her that the defendant had thrown him into a table and occasionally struck him. G also testified that A, while pointing to her vaginal area, told her that something was wrong "down there." A made that comment several times during the time that the defendant was staying at the apartment. G testified that A also told her that she wanted to see a psychiatrist. G explained that A never was very specific in her complaints and would not give a clear reason for her requests.

Additionally, in response to the inquiries concerning the change in her opinion about the defendant, G said that there were occasions when she would find five or more pairs of A's underpants all layered together as if they had been pulled on and taken off as one unit. She indicated that when she found them in A's bedroom, she assumed that her daughter was concerned about having an accident because she sometimes waited too long to use the bathroom facilities. She was told by A, years later, at the time they were discussing the contents of her letter to G, that she layered her underwear "to make it harder for [the defendant]." For those reasons, G indicated that she would not have left the defendant with her children if she knew then what she knew at the time of trial.

The court gave limiting instructions to the jury in connection with the hearsay statements related by G during her testimony. In fact, the court interrupted G during her testimony and admonished the jury: "You are hearing certain information that relates to a question asked by counsel. The question asked by counsel was has her opinion changed. She is testifying that her opinion has changed and why it has changed, but the underlying facts about why her opinion has changed are not in evidence. She can testify as to why her opinion has changed, but you haven't heard anyone testify, for example, from her son, that the defendant hit [him].

So, this testimony is limited solely for the purposes of her explaining why her opinion has changed, something the defense counsel put at issue. So, I want you to listen to this testimony with that understanding, that these underlying facts are not in evidence, what counsel is exploring as to why her opinion is different."

The standard of review for the defendant's challenge to the court's evidentiary ruling is well settled. "Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State v. Powell*, 93 Conn. App. 592, 599, 889 A.2d 885, cert. denied, 277 Conn. 924, 895 A.2d 797 (2006).

"Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. *Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence. . . .*

"In determining whether otherwise inadmissible evidence should be admitted to rebut evidence offered by an opposing party, the court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only

to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 599–600.

Here, the state does not challenge the defendant's claim that the statements of A and Joe, Jr., were hearsay. The state argues that the court properly exercised its discretion in admitting G's testimony because the defendant elicited her subjective opinion about his capacity for harming her children at the time that he was staying at the apartment. The defendant specifically limited his questioning to the knowledge she had at the time A claimed that the abuse had occurred. The state claims that in order to place that opinion in context, the court properly allowed G to modify her opinion of the defendant by considering additional information that came to her attention years later.

We conclude that the court did not abuse its discretion in admitting the hearsay statements of A and Joe, Jr., through G's testimony on redirect examination. G was allowed to explain why her present opinion of the defendant differed from her past opinion, which had been based on limited information. "[T]here is no reason to limit the right of a party to place in context testimony adduced by an opposing party and, consequently, appellate courts have not done so." *State* v. *Gonzalez*, 272 Conn. 515, 544, 864 A.2d 847 (2005). Moreover, the court gave the jury a limiting instruction and carefully explained the sole purpose for which the testimony could be considered, i.e., the reason why G's opinion of the defendant had changed. We presume, because nothing indicates otherwise, that the jury followed those instructions. See *State* v. *Senquiz*, 68 Conn. App. 571, 579, 793 A.2d 1095, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002).

## II

The defendant's next claim is that the court improperly admitted constancy of accusation testimony from G and Rickevicius. Specifically, the defendant argues that their testimony was not admissible under *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc), because G and Rickevicius testified before A testified. This claim is without merit.

The state called G as its first witness. During the direct examination of G, defense counsel objected to a number of questions asked by the state on the ground that the testimony would constitute impermissible constancy evidence. The court overruled two of those objections. The state asked G what she did after she discussed the contents of the September, 2003 letter with A. After defense counsel's objection was overruled, G testified that she telephoned the Waterbury police department. Another line of inquiry by the state, objected to by defense counsel and overruled by the court, concerned G's observations when she cleaned A's bedroom during the period of time that the defendant was staying at the apartment. G was permitted to testify that she picked up A's clothing from the floor and noticed several pairs of underpants layered together, indicating that they had been put on or taken off as one unit.[2]

The state called Rickevicius as its next witness. Rickevicius testified that he met with G and A in October, 2003. He indicated that the purpose of the meeting was "[t]o ascertain the complaint and launch an investigation." Without discussing the contents of A's complaint, Rickevicius stated that he took a statement from A and

---

[2] There were other questions to which defense counsel objected, claiming impermissible constancy testimony, which were sustained by the court. At one point, defense counsel requested that an answer be stricken. The court granted that request and told the jury that it had to disregard G's response.

attempted to corroborate the information contained in that statement. Following the meeting, he attempted to locate the defendant.[3] Several times during the testimony of Rickevicius, defense counsel objected on the ground that he was improperly testifying as a constancy witness because A had not yet testified.

As properly noted by the court, G and Rickevicius were not testifying as constancy witnesses. They were not allowed to testify as to the nature of A's accusations against the defendant. They were providing background information for the jury. The court did not abuse its discretion in admitting the challenged testimony of G and Rickevicius because it concerned the various observations of the witnesses, the investigative efforts of the police and the sequence of events leading to the defendant's arrest. See *State* v. *Vidro*, 71 Conn. App. 89, 93–95, 800 A.2d 661, cert. denied, 261 Conn. 935, 806 A.2d 1070 (2002). "The omission of this information would have left important gaps in the chronology of the case and left the jury to speculate about the investigative efforts undertaken by the police." Id., 95.

## III

The defendant's next claim is that the court improperly admitted A's letter to G as constancy of accusation evidence. The defendant argues that the letter contained irrelevant and highly prejudicial language and that its admission violated the limiting strictures set forth in *State* v. *Troupe*, supra, 237 Conn. 284.[4]

---

[3] In his brief on appeal, the defendant emphasized that Rickevicius often referred to A as the "victim" during his testimony. The court, however, during the testimony of Rickevicius, cautioned the jury: "When he uses the term 'victim,' that, of course, is—there's only alleged in this case to be a victim, and you should understand that his characterization of the individual does not control what facts you need to find."

[4] In *Troupe*, our Supreme Court held that a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint. Any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge,

The defendant filed a pretrial motion in limine seeking to limit the admissibility of the letter. He requested that the court order the redaction of "[a]ny portions of the letter that could arouse the emotions and sympathies of the jury in favor of the victim, and . . . bring contempt and opprobrium on the defendant as well as any statements that would have the natural effect of arousing pity and sympathy for the victim . . . ." (Internal quotation marks omitted.) At a pretrial hearing held on March 24, 2005, the court requested that counsel meet to discuss a possible agreement as to the portions of the letter to be redacted. The court indicated that if counsel could not reach an agreement, the state and the defendant were to submit copies of the letter with their proposed redactions and that the court would hear argument before evidence commenced.

On the first day of trial, before any of the witnesses testified, counsel appeared before the court, and a lengthy colloquy ensued as to the proposed redactions. The court noted: "We have had discussions both on the record and in chambers regarding redacting this letter so that it complies with the requirements of *State* v. *Troupe*, [supra, 237 Conn. 284]." The court requested that defense counsel submit a copy of the letter with the defendant's proposed redactions and that the prosecutor indicate which of those redactions were contested. Counsel and the court then proceeded to review each page of the nine page letter.

It is undisputed that the only basis for the admission of the redacted letter was to corroborate A's testimony pursuant to the constancy of accusation doctrine.[5] The

including, for example, the time and place of the attack or the identity of the alleged perpetrator. Such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. *State* v. *Troupe*, supra, 237 Conn. 304.

[5] Although the state also argued that the letter was admissible under the residual or catch-all exception to the hearsay rule, the court denied its admissibility under that exception.

court stated that the limitations of *Troupe* were very narrow and that the proposed redactions of defense counsel, upon preliminary review, were "not extensive enough." From a review of the transcript, it is apparent that both the state and the defendant wanted to retain certain portions of the letter that exceeded the *Troupe* strictures. At one point, the court addressed defense counsel: "I'm not as interested in flow as I am in meeting the requirements of *Troupe*. And it seems to me that you can't have it both ways. If you want this document limited for purposes of constancy information, we're not going to include a lot of extraneous information." After considerable give-and-take among the court, defense counsel and the prosecutor, it appeared that an agreement had been reached with respect to the portions to be redacted. At no point did defense counsel object on the record to the inclusion of particular statements in the letter after the court made its various rulings.

The defendant now claims that most of the contents of the letter should not have been admitted because the unredacted statements went far beyond the fact and timing of the complaint. There are two specific portions of the letter that the defendant argues were "extraordinarily prejudicial." A wrote that she was "scarred [for] life" because of the defendant's actions, and she concluded the letter with the request, "please help me mom, you're my only hope."

The defendant claims that he preserved this issue when he filed his motion in limine requesting the redaction of any language in the letter that would arouse the emotions or sympathies of the jury. He argues that Practice Book § 60-5[6] provides that it is not necessary

---

[6] Practice Book § 60-5 provides in relevant part: "The [reviewing] court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . .

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining

to voice any further objection once an adverse ruling is made by the court.

The defendant filed his motion in limine on March 23, 2005. On March 24, 2005, the court asked counsel to meet and to discuss a possible agreement as to the redacted portions of the letter. On March 30, 2005, defense counsel presented the court with a copy of the letter containing the defendant's proposed redactions.[7] After considerable discussion on the record, it appeared that the defendant and the state had reached a compromise. The defendant did not object at that time to any unredacted statement. The redacted version of the letter was submitted as state's exhibit six during the direct examination of A. At that time, defense counsel indicated that she had no objection to its admission, and it was admitted as a full exhibit.[8]

---

to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same. . . ."

[7] We note that the defendant's copy of the letter with his proposed redactions was not marked as an exhibit and is not part of the record on appeal. The transcript clearly indicates that the parties and the court were using the defendant's proposed redactions as the starting point for the discussion on the admissibility of the various portions of the letter.

The "scarred [for] life" language was on page seven of A's letter. When the parties discussed that page, the prosecutor indicated that she had no issue with the proposed redactions, which suggests that defense counsel had not proposed that that language be redacted. When they reached the last page of the letter, defense counsel did not make any comment about A's plea for help. Again, it is not possible to determine on this record whether the defendant had proposed the redaction of that language.

It is the defendant's burden to provide this court with an adequate record for our review.

[8] The court gave a limiting instruction to the jury, indicating that the contents of the letter could be used only for the purpose of corroborating A's in-court testimony and not for substantive purposes, at the time the letter was admitted as an exhibit and in its instructions to the jury after the closing arguments of counsel. See *State* v. *Troupe*, supra, 237 Conn. 304.

The court reasonably could have concluded that defense counsel had abandoned any previous claims regarding the admissibility of certain portions of the letter and agreed with the redactions as discussed immediately prior to the start of evidence. The defendant never specifically requested that the "scarred [for] life" language or A's entreaty to G to "please help me mom, you're my only hope" be redacted from that exhibit. Moreover, the defendant stated that he had no objection to state's exhibit six when it was offered as a full exhibit. "For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, 85 Conn. App. 663, 680, 858 A.2d 860 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

We conclude that defense counsel's conduct represented acquiescence to the court's rulings with respect to the admissibility of the redacted version of A's letter. He has, therefore, waived any claim that its admission violated the limiting strictures set forth in *State* v. *Troupe*, supra, 237 Conn. 284.

IV

The defendant's final claim is that the state's prosecutorial improprieties during closing arguments deprived him of his due process right to a fair trial. He argues that the prosecutor improperly (1) expressed her personal opinion regarding the evidence presented at trial and (2) appealed to the emotions and sympathies of the jury. The defendant contends that the cumulative effect of those improprieties deprived him of a fair trial. Despite the defendant's failure to object to the challenged statements at trial, his claim is reviewable in light of *State* v. *Fauci*, 282 Conn. 23, 33, 917 A.2d 978

(2007). "Once prosecutorial impropriety has been alleged . . . it is unnecessary for a defendant to seek to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and it is unnecessary for an appellate court to review the defendant's claim under *Golding*." *State* v. *Fauci*, supra, 33.

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . . As we have indicated, our determination of whether any improper conduct by the state's attorney violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that [impropriety] was objected to at trial." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 361–62, 897 A.2d 569 (2006).

Because the alleged impropriety occurred during closing argument, we set forth the applicable legal principles. "[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . [B]ecause closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Nevertheless, [w]hile a

prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Citation omitted; internal quotation marks omitted.) *State* v. *Necaise*, 97 Conn. App. 214, 229–30, 904 A.2d 245, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

A

The defendant claims that the prosecutor improperly vouched for her view of the evidence in a statement made during her rebuttal argument to the jury. The defendant argues that by using the phrase, "because that's what happened," the prosecutor interjected her personal opinion or beliefs into the summation of the trial.[9]

"[A] prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal

---

[9] The defendant challenges a portion of the following comment made by the prosecutor: "Counsel said to you, well, now that her mother has somebody new, if that were the reason for her suddenly deciding to say that she was sexually assaulted, why suddenly bring up someone from so long ago? The defendant is no longer in their lives. How would that make her relationship with her mother any better? If that were the case, then why not just say that the mother's fiance was the one that was doing it? Why, just out of thin air, pull [the defendant's] name?

"Counsel is right, there were lots of other friends in the family that were around, so why choose [the defendant] as the individual? Why? *Because that's what happened.*" (Emphasis added.)

opinions. . . . It is not, however, improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 435, 902 A.2d 636 (2006).

We conclude that the comment of the prosecutor was not improper.[10] When the isolated comment challenged by the defendant is placed in context with the remainder of the remarks of the prosecutor during the rebuttal argument, it is clear that she was responding to the defendant's suggestion that A may have been making the accusations against him in order to gain the attention of her mother or that A was confused as to the identity of the individual who sexually assaulted her. The comments of the prosecutor invited the jurors to consider the different motives of A to lie or to tell the truth and invited them to use common sense and experience in evaluating the testimony of the witnesses. See *State* v. *Jose G.*, 102 Conn. App. 748, 761–62, 929 A.2d 324, cert. granted on other grounds, 284 Conn. 916, 931 A.2d 937 (2007). Taken in context, the comment did not constitute the personal opinion of the prosecutor.[11]

---

[10] Because we conclude that there was no impropriety, we need not reach the second prong of the inquiry, which is whether the defendant was harmed by the alleged impropriety. *State* v. *Necaise*, supra, 97 Conn. App. 232 n.14.

[11] In his brief on appeal, the defendant also mentions that the prosecutor characterized certain comments made by the defense in closing as "preposterous." The defendant did not provide any argument or analysis addressed to the impropriety of that comment or how it caused or contributed to a due process violation.

A review of the transcript reveals that the comment was made in the following context: "So, while counsel says, well, there were a lot of Joes that were prominent in her life. First of all, I asked that directly. Any doubt that this is the man, [the defendant], any doubt that that is the man who sexually abused you when you were a child? No doubt. No doubt at all. Is the argument really that maybe she confused her father whose name was Joe, her brother whose name was Joe, with the defendant who happens to be Joe as well? *That's preposterous.*" (Emphasis added.)

We conclude that the comment of the prosecutor was not improper. "Remarks that are nothing more than a permissible appeal to the jurors'

## B

The defendant next claims that the prosecutor improperly appealed to the emotions and sympathies of the jury when she began her closing argument by referencing certain impassioned statements from A's letter to G. Specifically, the defendant argues that the state's thrice repeated plea, "please help me," followed by the statement that those were "the words of a fifteen year old girl begging for someone to finally listen," invited the jury to make its decision on the basis of emotional rather than evidential factors.[12] We agree that the comments of the prosecutor were improper.

"It is well established that, a prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . We have stated that such appeals should be avoided because they have the effect of diverting the jury's attention from [its] duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) *State* v. *Bermudez*, 274 Conn. 581, 595–96, 876 A.2d 1162 (2005), aff'd after remand, 95 Conn. App. 577, 897 A.2d 61 (2006).

common sense do not constitute prosecutorial [impropriety]. . . . The state also is entitled to comment on the weaknesses in the defendant's case and on the strength of its case." (Citation omitted.) *State* v. *Lindo*, 75 Conn. App. 408, 416, 816 A.2d 641, cert. denied, 263 Conn. 917, 821 A.2d 771 (2003).

[12] The prosecutor began her closing argument with the following comments: "It took me over seven years to tell someone, my own mom, that I was raped by her friend. I don't know what to do anymore. *Please help me, mom.* You are my only hope. *Please help me.* Help me from what? From the years and years of thinking that something was wrong with her. Physically and emotionally. From the years of knowing that she was a victim of sexual abuse.

"*Please help me, mom. The words of a fifteen year old girl begging for someone to finally listen to what had happened to her all those years before. It is now the part of the case where you, the jury, will go back, be able to talk among yourselves and deliberate and decide the case." (Emphasis added.)

The letter from A to G was admitted as constancy of accusation evidence. Accordingly, the court gave a limiting instruction to the jury at the time of its admission.[13] The prosecutor, however, in her closing argument, made no reference to that fact when she read the emotional excerpts from the letter. "As a general matter, a prosecutor may use any evidence properly admitted at trial. Properly admitted evidence, however, may not be used for a purpose for which it was not admitted." *State* v. *Camacho*, 282 Conn. 328, 377, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007). The letter, admitted for the limited purpose of corroborating A's testimony pursuant to the constancy of accusation doctrine, was not used by the prosecutor for that purpose. Further, the sole purpose for repeating three times A's pleas for help could only have been to encourage the jury to sympathize with A and to decide the case on the basis of passion and emotion. See *State* v. *Warholic*, supra, 278 Conn. 377.

Having concluded that those comments of the prosecutor amounted to an improper emotional appeal, we must now ascertain whether the trial as a whole was fundamentally unfair and whether the impropriety so infected the trial with unfairness as to make the defendant's conviction a denial of due process. "In order to make this determination, we consider the factors [set forth in *State* v. *Williams*, supra, 204 Conn. 540], specifically: the extent to which the impropriety was invited

[13] The court instructed the jury: "The other thing that I am going to tell you is that the parts of the letter that you can read are admissible only for a limited purpose. They are not admissible for the truth of the matter contained in the letter. What that letter says.

"Let me say it another way. You may use what is said in the letter, what is written in the letter only to corroborate or not corroborate, as the case may be, [A's] in-court testimony. Again, you cannot use it to prove the truth of what is said in that letter, only to corroborate or not corroborate what she is saying in court."

The court also gave a limiting instruction with respect to the letter in its jury instructions following closing arguments.

by the defendant's conduct or argument, the severity of the impropriety, the frequency of the impropriety, the centrality of the impropriety to the critical issues in the case, the strength of the curative measures adopted and the strength of the state's case." *State* v. *Camacho*, supra, 282 Conn. 382. After examination of all of the factors, we conclude that the defendant was not deprived of his right to a fair trial by the prosecutorial impropriety in this case.

We do not discern any conduct by the defendant as having invited these improper appeals to the emotions of the jurors. The prosecutor began her closing argument by thrice repeating A's pleas from the letter. Further, the state's case was not particularly strong because the credibility of A was the central issue in the case, and there was no physical evidence to corroborate her testimony. See *State* v. *Warholic*, supra, 278 Conn. 397. Those factors weigh in favor of the defendant.

The improper comments, however, occurred only during closing argument, where we typically allow some latitude, and they represented a small portion of that argument. The improper comments were isolated and sporadic rather than frequent and pervasive. See *State* v. *Camacho*, supra, 282 Conn. 383. We do not view the statements made as "grossly egregious . . . [and] severe enough to mandate reversal." (Internal quotation marks omitted.) Id. Moreover, in determining whether prosecutorial impropriety was severe, we consider it highly significant that defense counsel failed to object to the remarks when made or to request curative instructions or to move for a mistrial. *State* v. *Fauci*, supra, 282 Conn. 51. Additionally, the comments were unrelated to the critical issues in the case. Indeed, the absence of a connection to any evidentiary matter in the case made them improper.

Finally, with respect to curative instructions, the court gave no specific instruction directed to the

improper remarks because the defendant did not object to the prosecutorial impropriety. Although this does not preclude us from reviewing the defendant's claim, the failure to object is important. The defendant "bears a significant degree of responsibility for the fact that this impropriety went uncured. . . . In addition, we note that a failure to object demonstrates that defense counsel presumably [did] not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Luster*, supra, 279 Conn. 445–46.[14]

Accordingly, we conclude that, in the context of the entire trial, the improper comments of the prosecutor did not deprive the defendant of his due process right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[14] Additionally, even though the court gave no specific curative instructions, the court reminded the jurors in its general instructions following closing arguments that they were not allowed to make their decision on the basis of sympathy and that the statements of counsel during those arguments were not evidence: "You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. You must perform your duty with strict regard to the law as given to you by me because I alone am responsible for stating the law and the legal principles involved. Also, your verdict must be based absolutely and solely upon the evidence presented to you in the trial of this case. You should not be swayed or influenced by any sympathy or prejudice for or against anyone."

The court also instructed the jury: "You should keep in mind the arguments and statements by the attorneys in final argument or during the course of the case are not evidence. You should not consider as evidence their recollection of the facts, nor their personal belief as to any facts or as to the credibility of any witness, nor any facts that any attorney may have presented to you in arguments from the attorney's knowledge that was not presented to you as evidence during the course of the trial."

"[T]he jury [is] presumed to follow the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Russell*, 101 Conn. App. 298, 326, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).