******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSE SALAZAR
(AC 35153)

DiPentima, C. J., and Beach and Keller, Js.

*Argued March 11—officially released July 8, 2014*

(Appeal from Superior Court, judicial district of
Waterbury, Prescott, J.)

*David J. Reich*, assigned counsel, for the appellant
(defendant).

*Emily D. Trudeau*, deputy assistant state's attorney,
with whom, on the brief, were *Maureen Platt*, state's
attorney, and *Elena Palermo*, assistant state's attorney,
for the appellee (state).

*Opinion*

BEACH, J. The defendant, Jose Salazar, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant claims that (1) prosecutorial improprieties during the prosecutor's closing and rebuttal arguments deprived him of his due process right to a fair trial, and (2) this court should prohibit the use of constancy of accusation evidence in sexual assault cases involving children. We disagree, and we affirm the judgment of the trial court.

The following facts, as reasonably could have been found by the jury, and procedural history are relevant. At trial, the victim[1] testified that in January, 2006, when she was ten years old, she met the defendant, who at that time was her mother's boyfriend. She testified that the defendant had, on various occasions, entered her bedroom at night and sexually molested her by touching her breasts and vagina. She testified that the defendant threatened to hurt her mother if she told anyone about the abuse. The victim also testified that she did not want to "ruin her mom's happiness" by reporting the abuse; her mother had not been happy since her father's death years prior. The mother's relationship with the defendant ended in late 2006.

At a later time, however, the victim did report the abuse to several people. Sarah McLeod, a therapist,[2] conducted a group therapy exercise in which the victim and other participants were asked to make time lines of important moments in their lives. The victim indicated on her time line that she had been "touched." After speaking to the victim about the abuse, McLeod referred her to another therapist, Gira Valentin Cuffee. The victim told Cuffee that she had been sexually assaulted by her mother's former boyfriend, the defendant. The police were notified, and Detective Cathleen Knapp contacted the victim, who did not feel comfortable providing details of the abuse at that time. The victim later approached Knapp, described the abuse, and identified the defendant as the perpetrator.

The victim testified at trial about the facts of the assault and identified the defendant as the assailant. She testified about her reporting of the assault to several people. The state then elicited testimony from three constancy of accusation witnesses: McLeod, Cuffee, and Knapp. The defendant was found guilty on all counts and was sentenced to a total effective term of twelve years incarceration, execution suspended after four years, and ten years probation. This appeal followed.

I

The defendant claims that he was deprived of his due

process right to a fair trial because the prosecutor, during final arguments, improperly urged the jury to use constancy of accusation evidence substantively. We are not persuaded.

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry. . . .

"In determining whether the defendant was denied a fair trial . . . we must view the prosecutor's [actions] in the context of the entire trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Fauci*, 282 Conn. 23, 32, 917 A.2d 978 (2007). "[W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . ." (Internal quotation marks omitted.) *State* v. *Otto*, 305 Conn. 51, 77, 43 A.3d 629 (2012).

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . [B]ecause closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Nevertheless, [w]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Citation omitted; internal quotation marks omitted.) *State* v. *Necaise*, 97 Conn. App. 214, 229–30, 904 A.2d 245, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

The defendant claims that the state improperly argued before the jury that constancy of accusation evidence could be used substantively for proving the truth of the accusation, rather than merely as corroboration of the victim's testimony. There is no claim, in this context, that the evidence itself was improperly admitted. Our Supreme Court summarized the previously existing law as follows: "In sex-related crime cases, we have long recognized that a witness, to whom a victim has complained of the offense, could testify not only to the fact that a complaint was made but

also to its details. . . . In approving the admission of constancy of accusation testimony, we have explained that it would be natural for the victim of actual or attempted sexual assault to relate the incident to others if it had actually happened, but not if the incident had not occurred. Similarly, the victim's recitation of the details of the incident would likely be constant if the claim were true, but discrepancies would be more likely to appear if the incident had not occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Troupe*, 237 Conn. 284, 290–91 n.7, 677 A.2d 917 (1996).

The court went on to modify the constancy of accusation doctrine and explained the need to protect against the preconception "that women who do not complain [shortly after the crime] have not really been raped." (Internal quotation marks omitted.) Id., 302. But the court also recognized that defendants may be unfairly harmed by the admission of substantive hearsay evidence. The prejudice is "magnified if the victim has reported the alleged offense to a number of persons, all of whom are permitted to testify about the details of the complaint. In such circumstances, there is an enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony." Id., 302–303. The court then stated that its "evaluation of these competing considerations persuades us that the scope of our current [constancy of accusation] doctrine is broader than necessary to protect against the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident. Although we are not yet willing to reject the constancy of accusation doctrine completely due to biases still extant in our society, we are persuaded that restricting the evidence adduced thereunder to testimony regarding the fact of the complaint provides a more reasonable accommodation of the interests of the defendant, the state and the victim than does our current rule." Id., 303.

Our Supreme Court concluded "that a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. . . . In addition, the defendant is entitled to an instruction that any delay by the victim

in reporting the incident is a matter for the jury to consider in evaluating the weight of the victim's testimony." (Footnotes omitted.) Id., 304–305.

The holding in *Troupe* was later codified in § 6-11 (c) of the Connecticut Code of Evidence, which provides: "A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes."

### A

The defendant argues that the prosecutor improperly used constancy of accusation testimony during closing and rebuttal arguments not only to bolster the victim's credibility by corroborating her testimony, but also to suggest that the disclosures were themselves true. He contends that this use of constancy of accusation testimony was improper because the sole permissible use of such testimony under *Troupe* is to counteract a perhaps false perception that a victim's credibility is dubious because she did not disclose the incident promptly to the authorities.

### 1

The defendant argues that the prosecutor improperly suggested to the jury that the victim's statements to McLeod and Cuffee were true because of the circumstances under which they were given. He claims that the prosecutor argued that because the victim did not know that McLeod would ask her to create a timetable, this disclosure was spontaneous and therefore credible, and that because the victim initially did not want the therapist, Cuffee, to call the police, the victim's statements to Cuffee were correspondingly more credible, as they were made reluctantly and not with an eye to prosecution.[3]

The defendant also argues that the prosecutor urged that the victim's statements to Knapp were credible by stressing Knapp's credentials in talking to children. The prosecutor stated in closing argument: "Detective Knapp is in the sex crimes unit. She has experience talking to children."

These arguments of the prosecutor were not improper. They stressed details surrounding the victim's disclosure rather than details of the actual misconduct. Pertaining to the circumstances of the victim's disclosures, the arguments stressed the context of the disclosures for an understanding, perhaps, of the approximately three year delay in disclosure. The cir-

cumstances under which the victim related the incident to McLeod, Cuffee and Knapp arguably assisted the jury in evaluating whether the victim's complaints to these constancy witnesses corroborated her in-court testimony. The statements are relevant to the biases that our Supreme Court in *Troupe* sought to address—that victims who do not complain of the sexual assault shortly after the event have not been sexually assaulted. *State* v. *Troupe*, supra, 237 Conn. 302. The statements in issue do not contain reiterations of the details of the assault. The prosecutor stressed certain evidence admitted at trial, and the defendant does not claim that the evidence was improperly admitted. "It is not . . . improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . ." (Internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 435, 902 A.2d 636 (2006).

2

The defendant further argues that the prosecutor improperly bolstered the credibility of the victim's complaints when she stated during closing argument that the victim did not hesitate in identifying the defendant as the assailant from a photographic array because "[s]he knew that he sexually assaulted her. Hard thing to forget."[4]

Under *Troupe*, constancy of accusation testimony properly is limited to details that are "necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . [S]uch evidence is admissible only to corroborate the victim's testimony and not for substantive purposes." *State* v. *Troupe*, supra, 237 Conn. 304. The prosecutor argued that the reason that the victim did not hesitate when identifying the defendant as her assailant was that the victim "knew that [the defendant had] sexually assaulted her" and that such an event is a "[h]ard thing to forget." The victim's identification of the defendant to Knapp was admitted for the purpose of corroborating the victim's testimony pursuant to the constancy of accusation doctrine. The prosecutor's comments in this respect, however, encouraged the jury to use the evidence of the victim's identification of the defendant to Knapp substantively. Although the evidence was properly admitted at trial, it "may not be used for a purpose for which it was not admitted." *State* v. *Camacho*, 282 Conn. 328, 377, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007). Accordingly, the prosecutor's comments urging the evidence to be used substantively were improper. See *State* v. *Kelly*, 106 Conn. App. 414, 432–33, 942 A.2d 440 (2008) (prosecutor's use during closing argument of constancy evidence for substantive purposes improper).

The defendant also argues that the following statement made by the prosecutor during closing argument was improper: "And the witnesses that you heard, Sarah McLeod, Gigi Valentin [Cuffee] . . . Detective Knapp, all said she said it was her mom's ex-boyfriend. He was identified as [the defendant]. It was on [a certain street] in [town].[5] . . . *No conflicts about who it was, where it occurred, what he did.*" (Emphasis added.)

Constancy of accusation testimony can properly be used to corroborate the victim's testimony. *State* v. *Troupe*, supra, 237 Conn. 304–305. The fact that there were no conflicts in the testimony of the constancy of accusation witnesses was properly used to corroborate the victim's testimony. The statements, however, were subject to ambiguity because they could also have been interpreted as encouraging the jury to use the constancy testimony for substantive purposes. "[C]losing arguments of counsel . . . are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial [impropriety], they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Internal quotation marks omitted.) *State* v. *Luster*, supra, 279 Conn. 441. We do not conclude that there was error simply because the meaning of an isolated statement was unclear. See *State* v. *Schiller*, 115 Conn. App. 189, 196, 972 A.2d 272, cert. denied, 293 Conn. 910, 978 A.2d 1113 (2009).

The defendant also argues that the following statement made by the prosecutor during rebuttal argument was improper: "[T]here was no relationship in 2009 with [the victim] and the defendant. The mother wasn't involved in the defendant's life in 2009. There was nothing going on with [the defendant]. He had long been out of their lives. There was . . . no motive to lie. *What she did was told the truth.*" (Emphasis added.)

"[I]t is not improper for a prosecutor to remark on the motives that a witness may have to lie, or not to lie, as the case may be." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 585, 849 A.2d 626 (2004). The comments related to the victim's lack of motive to lie were followed by a statement that the victim "told the truth." This statement is ambiguous because it is not clear whether the statement referred to the victim's lack of motive to lie in her testimony to the jury or her lack of motive to lie in the substance of her statements to the constancy witnesses. If the statement were interpreted to mean that the victim "told

the truth" in her complaints to the constancy witnesses, then the statement would be improper because it would encourage the jury to use constancy evidence for substantive purposes. Nevertheless, because the meaning of the statement is unclear, we do not conclude that the prosecutor's comment was improper. See *State* v. *Schiller*, supra, 115 Conn. App. 196.

B

Having determined that some of the prosecutor's remarks were improper, we now turn to an analysis of whether those remarks deprived the defendant of a fair trial. "[A] determination of whether the defendant was deprived of his right to a fair trial . . . involve[s] the application of the factors set out . . . in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). As [the court] stated in that case: In determining whether prosecutorial [impropriety] was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Fauci*, supra, 282 Conn. 33–34.

Here, the state's case was not particularly strong; there was no physical evidence and it was the victim's word against that of the defendant. The issue of the victim's credibility, then, was a central issue at trial. The improprieties were infrequent and were limited to relatively minor isolated statements during closing argument; they did not pervade the proceeding. See *State* v. *Jenkins*, 70 Conn. App. 515, 542, 800 A.2d 1200, cert. denied, 261 Conn. 927, 806 A.2d 1062 (2002). Furthermore, the comments were not severe enough to jeopardize the defendant's right to a fair trial, and the defendant did not object to the comments at trial. "To the extent that defense counsel failed to raise an objection, that fact weighs against the defendant's claim that the improper conduct was harmful. . . . A failure to object demonstrates that defense counsel presumably [did] not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial. . . . Given the defendant's failure to object [to the majority of the improprieties now alleged], only instances of grossly egregious misconduct will be severe enough to mandate reversal." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilson*, 308 Conn. 412, 449, 64 A.3d 91 (2013).

Before any witness testified regarding constancy of accusation, the court instructed the jury that it was not to consider the statements made by the victim to the constancy witnesses for the truth of the matter asserted,

but only for assessment of the victim's credibility.[6] In its final instructions, the court reiterated that the statements made by the victim to constancy witnesses "were admitted solely to corroborate or not corroborate the complainant's testimony in court. The statements are to be considered by you only in determining the weight and the credibility you will give the complainant's testimony given here in court. These statements are not to be considered by you to prove the truth of the matters asserted . . . but are presented for you to consider when assessing the credibility that you will give to the complainant's in-court testimony."

Accordingly, we conclude that the defendant has not shown that "the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 723, 793 A.2d 226 (2002).

II

The defendant next claims that this court should modify the constancy of accusation doctrine so that it does not apply to sexual assault cases involving minors.[7] The defendant is challenging the constancy of accusation doctrine as modified by *State* v. *Troupe*, supra, 237 Conn. 284, and as codified by § 6-11 (c) of our evidence code. The defendant's thesis is that in this category of case, expert testimony regarding a child's reluctance to report abuse is frequently admitted. Constancy of accusation testimony, serving much the same purpose, may be conceptually redundant and unfairly cumulative, according to the defendant. We decline to address this claim other than to note that "as an intermediate appellate body, we are not at liberty to discard, modify, reconsider, reevaluate or overrule the precedent of our Supreme Court." *DePietro* v. *Dept. of Public Safety*, 126 Conn. App. 414, 422 n.3, 11 A.3d 1149, cert. granted on other grounds, 300 Conn. 932, 17 A.3d 69 (2011).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] There is no indication in the record that McLeod had been conducting therapy as treatment for any sort of sexual abuse.

[3] The defendant does not point to specific statements made by the prosecutor in this regard. In describing the time line, the prosecutor stated during closing argument: "So, how did she disclose? When did she decide to disclose? . . . She was in a group activity, and she was asked by Sarah McLeod—she and the rest of the girls—I want you to do a time line of your lives. I want you to do a time line of the significant events that affect you, who you are." With respect to Cuffee's informing the police of the allegations, the prosecutor stated during closing argument that after the victim reported the allegations to Cuffee, "[t]he police were called. But not because [the victim] said, I want the police involved. The police were called because that was the process."

[4] In context, the statement was as follows: "[The victim] then was asked, well, can you identify him? And she was shown a [photographic] array,

pictures, all together, of different men. She was asked, do you recognize anyone, and if you do, who do you recognize and from where. And [the victim] picked out [the defendant]. And she said that this is the man. I recognize him, and I recognize him as the man who sexually assaulted me. According to Detective Knapp, there was no hesitation. *She knew that he sexually assaulted her. Hard thing to forget.*" (Emphasis added.)

[5] The prosecutor stated the specific name of the street and town in which the assault occurred. Because that information is not relevant to this appeal, we have not included it in this opinion. See footnote 1 of this opinion.

[6] The court's instruction was as follows: "Ladies and gentlemen of the jury, I'm going to give you an instruction at this point. [The victim] has testified about some out-of-court statements that she made to [McLeod], [Cuffee] and [Detective] Knapp. You cannot consider that testimony about what she said to those individuals . . . for the truth of the matter contained in those statements. What you can use them for is to assess her credibility of the testimony that she's giving here in court."

[7] In his brief, the defendant states that the "Appellate Court may not be the proper court" to grant the requested relief.

————————————————————