■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD PETERSON, JR., Appellant. [666 NYS2d 785] —Casey, J. Appeal from a judgment of the County Court of Greene County (Pulver, Jr., J.), rendered April 23, 1996, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the third degree.

While on routine traffic patrol on April 21, 1995, State Trooper Kyle Lyles observed a blue Ford Escort automobile, driven by defendant, pass him at what he estimated to be 70 miles per hour in a 55 mile-per-hour zone. During the course of his pursuit, Lyles determined, by pacing the vehicle, that defendant was in fact speeding. Once stopped, Lyles approached the driver's side of the car where he noticed an ashtray on the dashboard and detected a faint scent of marihuana coming from the vehicle. A computer check revealed that defendant was driving with a suspended license. Lyles next approached the passenger side of the vehicle to question Nicole Wasp, the person whose name appeared on the car's registration, to see if she had a valid driver's license. Although her license checked out, Lyles asked Wasp to step from the vehicle where a search of the "bulging" pockets in her jacket revealed marihuana. After further questioning, more marihuana was found in Wasp's purse. Defendant and Wasp were then arrested and transported to the Windham Police Department where, during a strip search of defendant, a package of cocaine was discovered.

Defendant was thereafter indicted on charges of criminal possession of marihuana in the fourth degree, which was later reduced to unlawful possession of marihuana, criminal possession of a controlled substance in the third degree (cocaine) and aggravated unlicensed operation of a motor vehicle in the third degree. Following a suppression hearing, County Court (Battisti, J.) denied defendant's request to suppress the physical evidence, although it did suppress certain statements made by defendant. After a jury trial, during the course of which the charges pertaining to the marihuana and the unlicensed operation of the vehicle were dismissed, defendant was convicted of criminal possession of a controlled substance in the third degree and sentenced to a term of imprisonment of 8⅓ to 25 years.

Defendant's main contention on appeal is that the stop of his vehicle was pretextual and, therefore, illegal, thus warranting the suppression of the cocaine. While the observation of a traffic infraction can constitute a sufficient basis to justify the stop of a vehicle, it is not permissible for police officers to use the traffic violation as a pretext to investigate an unrelated matter (*see, People v Ynoa*, 223 AD2d 975, 978, *lvs denied* 87 NY2d 1024, 1027; *People v Melendez*, 195 AD2d 856, 857; *People v Letts*, 180 AD2d 931, 934, *appeal dismissed* 81 NY2d 833). The testimony at the *Huntley* hearing reveals that soon after Lyles started his 3:00 P.M. to 11:00 P.M. shift, he received information from Investigator Gordon Pieruzzi that someone might be transporting drugs into the Town of Windham, Greene County. Included in this report from Pieruzzi was a description of the car, a 1992 blue Ford Escort, and information that the suspect was defendant. Pieruzzi also told Lyles to meet up with Windham Police Officer George Tortorelis, who had been the original source of information to the State Police. It was minutes after he and Tortorelis had stopped at an abandoned gas station that Lyles observed defendant's speeding car.

Even recognizing that Lyles had the information from Pieruzzi with regard to defendant, we find that the stop of defendant's vehicle by Lyles was not motivated by anything other than the traffic violation (*see, People v Ross*, 228 AD2d 718, *lv denied* 88 NY2d 993; *cf., People v Roundtree*, 234 AD2d 612, *lv denied* 89 NY2d 1040; *People v Letts, supra*). Although Tortorelis and Lyles had met up prior to Lyles' pursuit of defendant, they both testified that they did not have an opportunity to discuss the information concerning the drug suspect, information which Lyles had received several hours earlier. Nor did Tortorelis inform Lyles, during the course of Lyles' questioning of defendant and Wasp, that he recognized defendant. Furthermore, Lyles never questioned defendant about the marihuana, which he smelled when he approached the vehicle, until after the drug was found on Wasp. He even indicated that, until this discovery, he was going to release defendant with an appearance ticket and defendant was, in fact, charged with speeding.

Having been authorized to stop defendant's vehicle based on his observation that defendant was speeding (*see, People v Schroeder*, 229 AD2d 917; *People v Lamanda*, 205 AD2d 934, 935, *lv denied* 84 NY2d 828), Lyles' continued detention of defendant to question Wasp was justified once it was discovered that defendant's license was suspended (*see, People v Pena*, 209 AD2d 744, 745, *lv denied* 85 NY2d 941). Since Wasp was ar-

rested for the marihuana possession[1] and defendant could not drive the vehicle with a suspended license, the arrest and subsequent search incident thereto, which led to the discovery of the cocaine, was appropriate (*see, People v Troiano*, 35 NY2d 476). In these circumstances, we agree with County Court that the stop of the vehicle was not pretextual and suppression of the physical evidence was not warranted.

We do find, however, that the evidence was legally insufficient to establish that defendant possessed the requisite knowledge of the weight of the cocaine to be convicted of criminal possession of a controlled substance in the third degree (*see, People v Ryan*, 82 NY2d 497).[2] Although such knowledge can be inferred from handling (*see, id.*, at 505; *People v Wright*, 214 AD2d 989, *lv denied* 86 NY2d 785), "possession alone does not readily support the conclusion that defendant was also aware that the drugs possessed were of a certain weight" (*People v Sanchez*, 86 NY2d 27, 33). As the amount possessed here, 0.55 ounces, was so close to the statutory limit of one-half ounce (Penal Law § 220.16 [12]), it cannot be said that the mere carrying of the package in his pants established defendant's knowledge of the weight (*see, People v Garcia*, 86 NY2d 27, 34-35; *People v Lamont*, 227 AD2d 873). Furthermore, although alternative methods have been recognized for establishing a defendant's knowledge of a drug's weight (*see, e.g., People v Sanchez, supra; People v Wiemeier*, 222 AD2d 972, 974; *People v Graham*, 209 AD2d 822, 823, *lv denied* 84 NY2d 1011), the People have failed to present sufficient evidence in this regard. Consequently, defendant's conviction of criminal sale of a controlled substance in the third degree must be reduced to criminal possession of a controlled substance in the seventh degree.

Cardona, P. J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law, by reducing defendant's conviction of criminal possession of a controlled substance in the third degree to criminal possession of a controlled substance in the seventh degree; matter remitted to the County Court of Greene County for resentencing and further proceedings pursuant to CPL 460.50 (5); and, as so modified, affirmed.

---

1. The appropriateness of Lyles' conduct in searching Wasp once her license check came back negative is not before us as defendant has no standing to claim any constitutional violations with respect to her (*see, People v Tejada*, 81 NY2d 861, 862).

2. Since the charges here were proffered prior to the statutory annulment of *People v Ryan* (*supra*) (L 1995, ch 75), the People were required to prove beyond a reasonable doubt that defendant was aware of the weight of the cocaine (*see, People v Ingram*, 235 AD2d 930, *lv denied* 89 NY2d 1095; *People v Warren*, 232 AD2d 589, 590, *lv denied* 90 NY2d 865).