2013 COA 40

The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Vincent J. IVERSEN, Defendant–Appellant.

Court of Appeals No. 11CA0553

Colorado Court of Appeals, Div. III.

Announced March 28, 2013

Rehearing Denied May 9, 2013

Mesa County District Court No. 09CR1594, Honorable Thomas M. Deister, Judge.

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rachel C. Funez, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

Opinion by JUDGE DAILEY

¶ 1 Defendant, Vincent J. Iversen, appeals the judgment of conviction entered upon a jury verdict finding him guilty of attempting to introduce marijuana concentrate into a detention facility in violation of section 18–8–203(1)(a), C.R.S.2012. We affirm.

## I. Background

¶ 2 While detained in a community corrections facility, defendant fell off his bed (top bunk), breaking his hip and injuring his back. To deal with his pain, defendant (1) visited a doctor, who issued him written documentation (hereafter, "certificate") recommending the use of medical marijuana; and (2) used the certificate to purchase marijuana concentrate (in the form of "Garlic Butter, For Medicinal Use Only") from the doctor's office, Nature's Alternative, which also functioned as a medical marijuana dispensary. Upon his return to the community corrections facility, facility officials seized the jar of marijuana concentrate.

¶ 3 Defendant was charged with the above-mentioned offense. Before trial, the prosecution filed a motion in limine to exclude evidence of defendant's appointment with the doctor.

¶ 4 At a hearing on the motion, the following evidence was presented:

- Defendant had received, and was familiar with, a community corrections handbook;
- The handbook provided that inmates are not allowed to possess any drug unless it is prescribed by a licensed physician and the inmate has permission of a community corrections staff member;
- All prescribed drugs must be turned over to the community corrections staff, who would keep them in a locked cabinet and supervise their administration;
- Defendant had been approved by community corrections to see the doctor at Nature's Alternative, to take money out of his account to pay for the visit, and for a facility ride to Nature's Alternative;
- Defendant was given a ride to Nature's Alternative by community corrections officials and was later picked up by them and returned to community corrections;
- The certificate given to defendant by the doctor was "a recommendation" for use of medical marijuana, "not a prescription"; [1]
- A person was not eligible to get medical marijuana simply by receiving or signing a certificate; instead the person was required to fill out, and have notarized, an application for a medical marijuana registry identification card (which defendant had not done); and
- Although "there was supposed to be a [thirty-five-day] waiting period," because the State was "approximately 70,000 applications behind" in processing medical marijuana registry identification cards, the "norm of the day" was to go straight to a dispensary once a person had a doctor's certificate.

¶ 5 Defendant argued that, because his visit to the doctor was relevant to show why he thought he could lawfully possess marijuana concentrate in the facility, the exclusion of

---

1. "[A] physician does not *prescribe* marijuana, but may only provide 'written documentation' stating that the patient has a debilitating medical condition and might benefit from the medical use of marijuana." *Beinor v. Indus. Claim Appeals Office*, 262 P.3d 970, 973 (Colo.App.2011) (quoting Colo. Const. art. XVIII, § 14(2)(c)(II)).

that evidence would impinge his constitutional right to present a defense.

¶ 6 The trial court granted the State's motion to exclude this evidence, concluding that (1) defendant had illegally possessed marijuana in any form, because he had not followed the proper procedures to secure a medical marijuana registry identification card; and (2) whether or not defendant knew he was violating the law was irrelevant.[2] Consequently, the court prohibited the parties from introducing "any evidence of the Defendant's possession of medical marijuana paperwork, as well as his consultation with [the doctor]."

¶ 7 At trial, defendant essentially claimed he had been entrapped by community corrections personnel. To this end, he testified that (1) before his doctor's appointment, he spoke with his case manager about his medical situation and asked "what was allowed and not allowed in Community Corrections as medication-wise"; (2) he spoke with one of the security officers about the "things that [he] can and cannot do"; (3) community corrections personnel had approved his doctor's appointment and his withdrawal of money from his account to pay for the doctor's appointment; (4) community corrections personnel had escorted him to and from Nature's Alternative, where he visited the doctor and purchased the medicinal "garlic butter"; (5) the community corrections officer who picked defendant up noticed "small green plants" depicted on the outside of the building housing Nature's Alternative; and (6) upon entering the community corrections facility, he opened up his backpack and handed the jar of marijuana concentrate, along with the doctor's certificate, to a corrections official.

¶ 8 At one point, the prosecution objected that, in allowing, or even eliciting, some of this evidence, the court had violated its own

pretrial ruling excluding evidence. (Indeed, the only additional evidence which defendant appears to have wanted to elicit was that concerning the doctor's issuance of the medical marijuana certificate to him.)

¶ 9 The prosecution's witnesses related that defendant had not volunteered the marijuana concentrate. Rather, it had been found in a search of defendant's backpack, without defendant's having told officials of its presence, despite ample opportunity to do so.

¶ 10 The jury found defendant guilty as charged, and the trial court sentenced him to ninety days incarceration, four years probation, and 600 hours of community service.

## II. Exclusion of Defense Evidence

¶ 11 Defendant contends that, in excluding evidence of his receipt of a doctor's medical marijuana certificate, the trial court impermissibly infringed on his constitutional right to present a defense. The excluded evidence, he says, would have supported a legitimate theory of defense, that is, that he was not guilty because he did not know that his conduct in attempting to introduce marijuana into the detention facility violated the law. For the following reasons, we are not persuaded.

¶ 12 Few rights are more fundamental than the right of the accused to put before the jury evidence that might influence the determination of guilt. *People v. Richards*, 795 P.2d 1343, 1345 (Colo.App.1989). However, the right to present a defense is not absolute; it requires only that the accused be permitted to introduce all relevant and admissible evidence. *People v. Harris*, 43 P.3d 221, 227 (Colo.2002); *see Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988) ("The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise

---

**2.** The court also found that "even if [defendant] should have a medical marijuana [registry identification card], he was not allowed to possess [the marijuana] in Community Corrections as an inmate." We have no occasion to review the propriety of this part of the court's ruling, because defendant has not argued that he was legally authorized, under the medical marijuana provisions of our state constitution and statutes, to

introduce marijuana into the facility. *Cf. People v. Watkins*, 2012 COA 15, ¶ 39, 282 P.3d 500, 506 (concluding that the statutory requirement "that all probation sentences explicitly include a condition that probationers not commit offenses during the probation period, includes federal offenses, and is not limited by [the medical marijuana provisions of the] Colorado Constitution, article XVIII, section 14").

inadmissible under standard rules of evidence.").

¶ 13 Evidence is relevant if it tends to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. CRE 401.

¶ 14 Here, the relevance of the proffered evidence turns on whether, to have committed a crime, defendant had to know he was violating the law in introducing marijuana into the community corrections facility.

¶ 15 "Generally speaking, where the law imposes criminal liability for certain conduct, the scienter element requires 'no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.'" *People v. Holmes,* 959 P.2d 406, 414 (Colo.1998) (quoting *United States v. Dashney,* 937 F.2d 532, 538 (10th Cir.1991)). "This general rule is based on the deeply-rooted principle that ignorance of the law or mistake of law is no defense to criminal prosecution." *Id.; see, e.g., Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1991); *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1957). "Based on the notion that the law is *definite* and *knowable,* the common law presumed that every person knew the law." *Cheek,* 498 U.S. at 199, 111 S.Ct. at 609 (emphasis added).

¶ 16 A person is not relieved of criminal liability due to a mistake of law unless permitted by statute, administrative regulation, or an official written interpretation. § 18–1–504(2), C.R.S.2012; *see People v. Bossert,* 722 P.2d 998, 1008 (Colo.1986) ("A sincere but mistaken belief as to whether particular conduct constitutes an offense is not a defense to prosecution for such conduct under this statute unless the conduct is in fact permitted by statute, administrative regulation or judicial decision.").

¶ 17 In this case, whether defendant could be relieved of criminal liability because of a mistake of law turns on the culpable mental state required by the statute under which he was prosecuted.

¶ 18 Pursuant to section 18–8–203(1)(a), "[a] person commits introducing contraband in the first degree if he or she knowingly and unlawfully ... [i]ntroduces or attempts to introduce ... marijuana ... into a detention facility." *Id.*

¶ 19 The critical part of the statute is the phrase "knowingly and unlawfully." The issue is whether the word "unlawfully" is independent of, or modified by, the word "knowingly." In the former case, section 18–8–203 would require only that defendant be aware of the nature of his conduct (i.e., that he know he is attempting to introduce marijuana into the detention facility). In the latter case, however, the statute would require that defendant *also* be aware that his conduct is unlawful.

¶ 20 The trial court interpreted section 18–8–203 in the former manner; defendant would have us interpret it in the latter one. In support of his position, defendant relies upon section 18–1–503(4), C.R.S.2012, which provides, "When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears."

¶ 21 Statutory interpretation is a question of law, which we review de novo. *Hendricks v. People,* 10 P.3d 1231, 1235 (Colo.2000). In interpreting section 18–8–203, our task is to ascertain and give effect to the intent of the General Assembly. *Dubois v. People,* 211 P.3d 41, 43 (Colo.2009). To discern the legislative intent, we look first to the language of the statute itself. *People v. Summers,* 208 P.3d 251, 253–54 (Colo.2009). Because we do not presume that the legislature used language idly, *People v. J.J.H.,* 17 P.3d 159, 162 (Colo.2001), "we give effect to every word and render none superfluous." *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 597 (Colo.2005).

¶ 22 Further, in construing a statute, "[w]e presume that the General Assembly intends a just and reasonable result that favors the public interest over any private interest, and we will not construe a statute

either to defeat the legislative intent or to lead to an absurd or illogical result." *People v. Reed,* 932 P.2d 842, 843 (Colo.App.1996).

¶ 23 In *People v. Ryan,* 82 N.Y.2d 497, 605 N.Y.S.2d 235, 626 N.E.2d 51 (1993), *superseded on other grounds by statute as stated in People v. Peterson,* 245 A.D.2d 815, 666 N.Y.S.2d 785, 787 n.2 (1997), the New York Court of Appeals applied a statute similar to the one at issue in this case. New York Penal Law § 220.18 provides that "[a] person is guilty of criminal possession of a controlled substance ... when he or she knowingly and unlawfully possesses [the substance]." According to the court in *Ryan,* New York courts have consistently held that this statute only requires the mens rea of knowingly; that "unlawfully" is not a term of mental culpability, but rather has an independent meaning, that is, "in violation of [a certain] law"; and that the statute only requires that a defendant be aware of the nature of his conduct. *Id.,* 605 N.Y.S.2d 235, 626 N.E.2d at 54; *see also People v. Vargas,* 86 Misc.2d 1018, 384 N.Y.S.2d 643, 644–45 (1976) (holding, in construing the phrase "knowingly and unlawfully sells," that "[b]oth 'knowingly' and 'unlawfully' modify 'sells'" and "[t]he two terms do not describe or affect each other"); [3] *cf. United States v. Aleman,* 417 F.Supp. 117, 121 (S.D.Tex.1976) ("In translating [the] portion of the complaint reading 'willfully, knowingly and unlawfully,' the interpreter erroneously interjected as a requisite element of the offense knowledge by the accused that it was illegal to carry a gun.... Even in the final statement by the interpreter, again with regard to the complaint, the element of actual knowledge of illegality was expressed.") (footnote omitted).

■ ¶ 24 We find this interpretation persuasive, and particularly so in the context of a statute proscribing conduct in a detention facility. The purpose of section 18–8–203 is "to control contraband in penal institutions."

*People v. Borrego,* 538 P.2d 1339, 1341 (Colo. App.1975) (not published pursuant to C.A.R. 35(f)). However, that purpose would be undermined by requiring, as defendant suggests, that the detainee know not only the nature of his or her conduct, but also the unlawfulness of his or her conduct as well. As the record indicates, the prohibitions on contraband in community corrections are meant to regulate the introduction of items into detention facilities that would be potentially disruptive, distracting, or otherwise dangerous to inmates and the overall operation of those facilities. Exempting from punishment individuals who unlawfully, though mistakenly, attempt to introduce contraband into the facilities does nothing to deter individuals from trying to import (and perhaps successfully importing) contraband into a detention facility.

¶ 25 For these reasons, we interpret section 18–8–203 as requiring only that a defendant know that he or she is introducing, or attempting to introduce, contraband into the detention facility; he or she need not know, in addition, that his or her conduct in introducing, or attempting to introduce, contraband into the detention facility, is unlawful (i.e., without legal excuse, justification, or authorization).

¶ 26 In so concluding, we necessarily reject, as misplaced, defendant's reliance on *Oram v. People,* 255 P.3d 1032 (Colo.2011); *People v. McNeese,* 892 P.2d 304 (Colo.1995); and *People v. Walden,* 224 P.3d 369 (Colo. App.2009). In *Oram,* the supreme court held that "a knowingly element must apply to each element of the burglary statute," and, thus, "the prosecution must prove that ... the defendant knew his entry was unlawful." 255 P.3d at 1038. The supreme court recognized this "unusual situation," however, in connection with a statutory provision that is markedly different from the one at issue here.[4] Similarly, in *McNeese,* the supreme

---

**3.** As with Colorado's statutes, the drafting of New York's criminal code "was particularly influenced by the Model Penal Code." *People v. Goetz,* 68 N.Y.2d 96, 506 N.Y.S.2d 18, 497 N.E.2d 41, 49 (1986).

**4.** The statute under consideration in *Oram* provided that "[a] person commits second degree

burglary if he 'knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property.'" 255 P.3d at 1037 (quoting § 18–4–203(1), C.R.S. 2012).

court held that the structure and purpose of, again, a much differently worded statute[5] contemplated that the "make-my-day" immunity or defense would be available in homicide home intruder cases only when the intruder had made "a knowing, criminal entry," that is, "an entry in knowing violation of the criminal law." 892 P.2d at 310–11. The reasons why the court recognized, in essence, an ignorance of the law defense in those circumstances, are not before us here.

¶ 27 We acknowledge that, in *Walden,* another division of this court viewed a statute containing the phrase "knowingly and unlawfully" as requiring that the accused know that his or her action was unlawful. The statute at issue there was the first degree criminal trespass statute, which penalizes an individual if he or she "knowingly and unlawfully enter[ed] or remain[ed] in a dwelling of another." § 18–4–502, C.R.S.2012. The division based its view of the requirements of the statute, however, not upon its own analysis of the statutory language, but rather upon pronouncements made in the *McNeese* and (in the court of appeals') *Oram* cases. *See* 224 P.3d at 379. As noted above, however, neither of those cases involved a statute similarly worded to the one before us now. For these reasons, we do not consider *Walden* persuasive authority on this point.

¶ 28 Having interpreted the statute as the trial court did, we perceive no error in its exclusion of the evidence concerning defendant's receipt of a medical marijuana certificate. That defendant did not know that it was unlawful for him to knowingly attempt to introduce marijuana into the detention facility was not a fact of consequence. *See United States v. Monroe,* 233 Fed.Appx. 879, 882 (11th Cir.2007) ("the district court did not abuse its discretion by excluding evidence in support of an ignorance of the law defense" because that defense was not permitted).

### III. Prosecutorial Misconduct

¶ 29 Defendant contends that the prosecutor violated his rights to due process and a fair trial by misstating the law, denigrating the defense, and misleading the jury. We conclude that reversal is not required.

¶ 30 In reviewing prosecutorial misconduct claims, we review whether the prosecutor's arguments were improper, and, if so, whether the misconduct warrants reversal, under the proper standard of review. *See Wend v. People,* 235 P.3d 1089, 1096 (Colo. 2010).

¶ 31 "[A] prosecutor, while free to strike hard blows, is not at liberty to strike foul ones." *Domingo–Gomez v. People,* 125 P.3d 1043, 1048 (Colo.2005) (quoting *Wilson v. People,* 743 P.2d 415, 418 (Colo. 1987)). Consequently, a prosecutor may use every legitimate means to bring about a just conviction, but he or she has a duty to avoid using improper methods designed to obtain an unjust result. *Id.* In this regard, a prosecutor may argue all reasonable inferences from the evidence in the record but he or she may not misstate or misinterpret the law, *People v. Bowles,* 226 P.3d 1125, 1132 (Colo. App.2009); denigrate defense counsel or the theory of defense, *People v. Jones,* 832 P.2d 1036, 1038 (Colo.App.1991); or mislead the jury, *People v. Davis,* 280 P.3d 51, 52 (Colo. App.2011).

¶ 32 "Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury." *People v. Geisendorfer,* 991 P.2d 308, 312 (Colo.App.1999). In this regard, a prosecutor is afforded considerable latitude in replying to an argument by defense counsel. *People v. Wallace,* 97 P.3d 262, 269 (Colo.App.2004).

¶ 33 Because defendant failed to object to any of the prosecutor's comments that he challenges on appeal, reversal is not warrant-

---

**5.** The make-my-day statute provides, in pertinent part, that, "[n]otwithstanding the provisions of section 18–1–704, any occupant of a dwelling is justified in using any degree of physical force, including deadly physical force, against another person when that other person has made an unlawful entry into the dwelling, and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry, and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant." § 18–1–704.5(2), C.R.S.2012.

ed in the absence of plain error. *See* Crim. P. 52(b); *People v. MunozCasteneda*, 2012 COA 109, ¶ 23, 300 P.3d 944 (Colo.App.2012).

¶ 34 In *Hagos v. People*, 2012 CO 63, 288 P.3d 116, the supreme court discussed the purposes and limits of plain error review:

Plain error review reflects "a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." Plain error review allows the opportunity to reverse convictions in cases presenting particularly egregious errors, but reversals must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time.

*Id.* at ¶ 23 (citation omitted) (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)); *see also People v. Ujaama*, 2012 COA 36, ¶ 40, 302 P.3d 296 (Colo.App.2012) (noting that plain error "should provide a basis for relief only on rare occasions," in part because "it is difficult to 'fault a trial court for failing to rule on an issue that had not been presented to it' ") (quoting *United States v. Simmonds*, 931 F.2d 685, 688 (10th Cir.1991)).

¶ 35 To be plainly erroneous, prosecutorial argument must be flagrantly, glaringly, or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Gordon*, 32 P.3d 575, 581 (Colo. App.2001). "Prosecutorial misconduct in closing argument rarely constitutes plain error." *People v. Rowe*, 2012 COA 90, ¶ 30, 318 P.3d 57 (Colo.App.2012).

¶ 36 In light of our interpretation of section 18–8–203, we perceive no error, much less plain error, in the prosecutor's statement indicating the prosecution did not have to prove that defendant knew his conduct was unlawful.

¶ 37 Nor do we perceive error in the prosecutor's rebuttal argument characterizing as "laughable" defendant's assertion that he was "doing what he was supposed to be doing." A prosecutor may not state or imply that defense counsel has presented the defendant's case in bad faith or otherwise make remarks for the purpose of denigrating defense counsel. *People v. Collins*, 250 P.3d 668, 677–79 (Colo.App.2010). However, a prosecutor has considerable latitude in replying to opposing counsel's argument. *Id.*

¶ 38 From our reading of the record, it appears that the "laughable" remark was not made for the purpose of mocking or personally attacking defense counsel, but, rather, in response to counsel's arguments and as a comment on the evidence and defendant's theory of the case. *Compare People v. Coria*, 937 P.2d 386, 388, 391 (Colo.1997) (prosecutor's references to "Theatrics 101," "smoke and mirrors," and "diversionary tactics" would be improper if used as a means to attack or mock defense counsel), *with Collins*, 250 P.3d at 678 (prosecutor's comment, made on rebuttal, that defendant's theory of reasonable doubt was "absurd" did "nothing more than suggest to the jury that defendant's theory as to why the jury should find a reasonable doubt was so unlikely as to strain credulity"), *and People v. Ramirez*, 997 P.2d 1200, 1211 (Colo.App.1999) (not improper to characterize defense argument as "blowing smoke"; comment was used as assertion, not that opposing counsel knew defendant's case was not meritorious, but that evidence in support of defendant's innocence lacked substance), *aff'd*, 43 P.3d 611 (Colo.2001).[6] Fur-

---

6. *See also United States v. Duronio*, 2006 WL 3591259 (D.N.J. No. CRIM.A. 02-0933 JAG, Dec. 11, 2006) (unpublished order) ("[T]he Government did not attack defense counsel personally, but argued that defense counsel's arguments were 'laughable,' *i.e.*, not viable. These statements do not amount to prosecutorial misconduct."), *aff'd*, 2009 WL 294377 (3d Cir. No. 06-5116, Feb. 9, 2009) (unpublished opinion); *State v. Kelly*, 106 Conn.App. 414, 942 A.2d 440, 452 n.11 (2008) (prosecution's "preposterous" comment was an appeal to the jury's common sense in evaluating the weaknesses in defendant's case); *People v. Matuszak*, 263 Mich.App. 42, 687 N.W.2d 342, 351 (2004) ("[w]hile the prosecution's assertion that the defense argument was 'ridiculous' may have been characterized differently, a prosecutor does not need to state arguments in the blandest possible terms"); *State v. Mohamed*, 2012 WL 6734447 (Minn.Ct.App. No. A12-0069, Dec. 31, 2012) (unpublished opinion) (no error in prosecution's implication that the "defense was ridiculous, even laughable, based

ther, even if the comment was improper, it was not so flagrant as to deprive defendant of a fair trial.

¶ 39 Nor is a new trial required because the prosecution argued that a person does not go to a doctor's appointment to get marijuana:

> That doesn't sound like much of a doctor's appointment to me when you walk in and buy marijuana. How about this? Common sense tell[s] you that you walk out of the doctor's appointment with a mason jar full of what's labeled as garlic butter that actually contains marijuana? Common sense tell[s] you that's what happens [at] a doctor's appointment? No.

¶ 40 "Counsel may not use closing argument to exploit the absence of evidence that he has succeeded in excluding." *Kohler v. EAC Organics, Inc.,* 76 Mass.App.Ct. 1103, 918 N.E.2d 480 (2009) (unpublished order); *see also State v. Bass,* 121 N.C.App. 306, 465 S.E.2d 334, 338 (1996) (concluding that the prosecutor misled the jury when he used the absence of evidence of victim's prior abuse to argue that the victim would know nothing of sexual activity but for defendant's alleged abuse, where prosecutor knew that evidence of prior abuse of victim had been excluded).

¶ 41 Defendant contends, and we agree, that the prosecution misled the jury during closing argument by suggesting that defendant's doctor's appointment was not legitimate, when the prosecution knew that defendant had, in fact, visited a doctor, and that defendant had obtained a certification from the doctor recommending medical marijuana. Indeed, these were the very facts the prosecution sought to exclude through its motion in limine.

¶ 42 However, we do not view this error as plain error requiring reversal. The fact that the prosecution used improperly—whether defendant had visited a doctor to purchase the marijuana—is immaterial to the issues in this case, that is, whether defendant knew he had attempted to introduce marijuana into the detention facility, or whether detention facility personnel refused defendant's request to check in the marijuana as a prescription

on the facts"; "[the] comments were blunt, but

drug. Under the circumstances, we cannot conclude that the prosecution's misleading use of the absence of evidence casts serious doubt on the reliability of defendant's conviction.

¶ 43 The judgment is affirmed.

Furman and Booras, JJ., concur.