23CA0765 Peo v Maupin 11-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0765
Adams County District Court No. 21CR1200
Honorable Jeffrey Smith, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Richard Allen Maupin,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE MOULTRIE
J. Jones and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

---

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jeffrey A. Wermer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Richard Allen Maupin, appeals the conviction and

sentence entered on a jury verdict finding him guilty of sexual

assault.  We affirm the conviction but reverse the sentence as to the

court's sexually violent predator (SVP) finding and remand with

instructions.

## I.     Background

¶ 2     The People charged Maupin with one count of sexual assault

(victim incapable of appraising the nature of her conduct), a class 4

felony.  § 18-3-402(1)(b), (2), C.R.S. 2025.

¶ 3     The following factual background reflects the evidence that the

jury heard at trial.

¶ 4     Maupin and the victim met for the first time at a bar one

evening.  They lived in the same apartment complex, which was

within walking distance of the bar.  The victim arrived alone around

8 p.m.  While at the bar, the victim played pool with Maupin and a

group of his friends.  The victim left the bar alone around 1 a.m.

after a bartender cut her off due to her level of intoxication.  After

leaving the bar, the victim fell onto her face outside.  She then drove

home, where Maupin saw her crying in the parking lot as he was

walking home from the bar.  Having recognized the victim from

1

hanging out with her at the bar, Maupin asked the victim if she was okay and whether she needed help. He then walked the victim to her apartment.

¶ 5      According to the victim, once inside her apartment, she iced her face with frozen fruit and then "passed out" on her bed — in her clothes and face down on the frozen fruit — while Maupin remained in her living room. She next remembered waking up with someone having vaginal sex with her. She realized that it was Maupin, and she told him "no." But Maupin repositioned her body on the bed and placed his penis in her anus, at which point she began screaming for him to stop. Maupin removed his penis and left the victim's apartment, and the victim "passed out" again.

¶ 6      The next day, the victim went to the hospital, where a nurse examined her, including taking swabs of her vagina and anus. DNA testing later indicated that Maupin's DNA profile matched the samples taken from the victim's genitals.

¶ 7      In a recorded phone call with a detective, which was later admitted as an exhibit during trial, Maupin first denied having sexual contact with the victim and later asserted that he had

2

consensual sex with the victim.  At trial, Maupin's theory of defense was consent.

¶ 8     A jury convicted Maupin as charged.  The court designated Maupin an SVP and sentenced him to six years in the custody of the Department of Corrections (DOC).

## II.     Discussion

¶ 9     Maupin contends his conviction and sentence should be reversed because (1) the prosecutor committed misconduct during voir dire and closing argument; (2) the district court abused its discretion in sentencing him; and (3) the district court misapplied the law by designating him an SVP.  We reject these contentions.

### A.     Prosecutorial Misconduct

¶ 10    Maupin argues that there were five instances of prosecutorial misconduct — four during voir dire and one during closing argument — that either individually or collectively require reversal. We address each alleged instance and conclude that reversal isn't warranted.

#### 1.     Standard of Review and Preservation

¶ 11    We review claims of prosecutorial misconduct using a two-step analysis.  *People v. Robinson*, 2019 CO 102, ¶ 18.  First, we

"determine whether the prosecutor's conduct was improper 'based on the totality of the circumstances.'" *Id.* (quoting *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010)). We evaluate the alleged misconduct by examining the context of the argument as a whole and in light of the evidence before the jury. *People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010).

¶ 12 Second, if we conclude that the prosecutor's conduct was improper, we decide whether the misconduct warrants reversal under the applicable standard of reversal. *Robinson*, ¶ 18.

¶ 13 We review the one instance of alleged misconduct to which Maupin's attorney objected for nonconstitutional harmless error. *Hagos v. People*, 2012 CO 63, ¶ 12. Under this standard, we will reverse only when an error substantially influenced the verdict or affected the fairness of the trial proceedings. *Id.*

¶ 14 Because Maupin's counsel didn't object to the remainder of the prosecutor's statements, we review any error in allowing those statements for plain error. *Wend*, 235 P.3d at 1097. Only misconduct that is "flagrantly, glaringly, or tremendously improper" warrants reversal under the plain error standard. *Domingo-Gomez*

*v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)).

## 2. Analysis

### a. The Prosecutor Didn't Improperly Elicit the Potential Jurors' Opinions on Consent and Intoxication

¶ 15   Maupin contends that the prosecutor improperly elicited juror opinions about consent and intoxication.  We disagree.

#### i. Additional Facts

¶ 16   During voir dire, the prosecutor began her line of questioning by asking the jurors what consent looked like to them.  One juror responded that consent to sexual encounters should be verbalized by the parties involved.  The prosecutor then asked jurors if they could "think of other ways that you can determine if two people have consented even though they didn't tell you," and she also asked them about body language, actions, and unspoken conduct that might inform whether a person has consented to sexual activity.

¶ 17   The prosecutor then moved on to discuss consent when intoxication is involved.  She first asked jurors whether any of them thought that "you cannot consent to a sexual act if you are

inebriated." She next asked if "the level of intoxication" mattered. Then, she asked the jurors how a person could tell if another person — including a stranger — had reached a level of intoxication where consent was not possible.

¶ 18 One juror said that he believed that "[i]f you're too drunk, you can't consent." The prosecutor asked the juror, "What level do you have to be at if you're drunk?" The juror responded, "falling down or passed out." The prosecutor then posed the following hypothetical:

> I'll use a female as an example. If you're at a bar and you see a female and she's been drinking. You don't how much. You don't know her. And she appears to be drunk and then she is falling down . . . and not hearing anything else about her, would you think that girl might be too drunk to consent to have sex, not necessarily with you, but just in general? But she might be too drunk to consent to anything really?

The juror responded in the affirmative, based on his own experience of being drunk.

¶ 19 Defense counsel didn't object at any point during this line of questioning.

## ii. Application

¶ 20     The purpose of voir dire is to allow the parties to reveal and address the beliefs of potential jurors that could cause them to be biased in a manner that prevents one of the parties from receiving a fair trial. *People v. Garcia*, 2022 COA 144, ¶ 18. However, counsel isn't permitted to educate potential jurors on a particular theory of the case, *Edwards v. People*, 418 P.2d 174, 177 (Colo. 1966), and because it's presumed that the court will adequately inform jurors of the applicable law in its jury instructions, the court can exercise its discretion to limit voir dire that attempts to educate the jury about legal concepts, *People v. Collins*, 730 P.2d 293, 301 (Colo. 1986).

¶ 21     Maupin asserts that the prosecutor's questions sought to "indoctrinate the jury on the key area of dispute at trial in a manner favorable to the prosecution's theory of guilt." We disagree.

¶ 22     The questions that Maupin challenges were proper methods of determining whether jurors would be biased for or against either party's theory of the case: Maupin's theory that the victim consented while intoxicated, or the People's theory that she didn't. Indeed, defense counsel also asked the potential jurors to elaborate

7

on the views they expressed on consent and intoxication. Defense counsel asked one prospective juror whether she could set aside her bias based on her answers about consent and asked another juror whether it was "easier for a sober person" to judge the intoxication of another. We thus conclude that the prosecutor's questions were simply an attempt to find out the jurors' views about consent and intoxication. The prosecutor therefore didn't engage in misconduct by asking those questions.

¶ 23    We also conclude that the prosecutor's hypothetical wasn't improper. The prosecutor didn't tell jurors that the hypothetical related to the parties or specific facts in the case. *See People v. Brewer*, 720 P.2d 583, 588 (Colo. App. 1985) (approving prosecution's use of nonspecific hypotheticals during voir dire). While the prosecutor generally discussed in her hypothetical a woman who appeared to be drunk at a bar, she didn't tie the example to the specific facts in this case by describing, for example, a woman falling or sliding off a barstool or a woman falling down outside and injuring herself. There is no indication that the prosecutor otherwise argued the People's case through the hypothetical. Notably, it was the potential juror who first indicated

that it was his opinion that someone who was falling down was too drunk to consent. The prosecutor's hypothetical thus permissibly investigated the juror's views about issues central to Maupin's case.

¶ 24    Accordingly, the prosecutor's voir dire inquiries about consent and intoxication weren't improper.

### b.    The Prosecutor Didn't Improperly Elicit Juror Opinions About the Behavior of Sexual Assault Victims

¶ 25    Maupin contends that the prosecutor committed misconduct by questioning prospective jurors about the behavior of alleged sexual assault victims. We aren't persuaded.

### i.    Additional Facts

¶ 26    During voir dire, the prosecutor questioned the potential jurors about their understanding of the behavior of alleged sexual assault victims.

¶ 27    The prosecutor first asked a potential juror what he might "expect to see or hear about how the victim acts or things she does" the day after an assault and whether the juror would "have any feelings on that or thoughts on what the appropriate response [from the victim] would be," such as calling the police or not. The juror responded that everyone responds differently to traumatic events.

¶ 28    The prosecutor next asked another juror if there was a "correct response," and that juror responded no, that a victim's response was "based on the person."  The prosecutor followed up by asking what the prospective jurors would expect an alleged victim's demeanor to be when the victim testified, and several jurors responded.  Finally, the prosecutor asked jurors if it would be a "red flag" or "less believable" if an alleged victim testified without emotion.  One juror responded no and said that "everybody handles things differently."  Another juror responded that she would find it more difficult to believe an alleged victim if there was "zero emotion."

¶ 29    Defense counsel didn't object to this questioning.

ii.    Application

¶ 30    Maupin asserts that the prosecutor's questions were "obviously improper" because the "prosecutor wanted the precise manner of how the jurors would evaluate [the victim's] demeanor." Not so.

¶ 31    The prosecutor asked open-ended questions designed to elicit whether any jurors had preconceived notions about how an alleged sexual assault victim is "supposed" to act in response to an assault

10

or while testifying about the assault. Nothing about the prosecutor's questions directed the jurors toward a certain answer or suggested how they should evaluate the victim's demeanor or credibility. Accordingly, the prosecutor's questions embodied the purpose of voir dire — to determine if the jurors could be fair and impartial in their decisions.

¶ 32 Moreover, the court correctly instructed the prospective jurors before voir dire and before deliberations that it was the jury's role to consider each witness's motive and demeanor and that the jury could accept or reject, in whole or in part, each witness's testimony.

### c. The Prosecutor Didn't Improperly Attempt to Engender Sympathy for the Victim

¶ 33 Maupin also contends that the prosecutor committed misconduct during voir dire by asking a prospective juror to imagine himself in the victim's shoes, which was an improper attempt to have the jurors sympathize with the "difficulties [the victim] would face while testifying" in a way that violated the "golden rule." We disagree.

11

## i.    Additional Facts

¶ 34    The prosecutor asked prospective jurors what demeanor they would expect in the courtroom from an alleged victim of sexual assault. She specifically asked juror C.A. what expectations he might have about a testifying victim's demeanor. Juror C.A. responded that he "would have no expectations because everyone would handle that differently." After asking all of the potential jurors if any of them had ever testified before, the following exchange occurred with juror C.A.:

> [PROSECUTOR]: [I]s this uncomfortable for you even like me asking you questions and you're sitting here?
>
> [JUROR]: It's somewhat uncomfortable.
>
> [PROSECUTOR]: A little bit, right? You don't know what I'm going to ask you.
>
> [JUROR]: Right.
>
> [PROSECUTOR]: Could you imagine what it would feel like to come in and sit in that chair and talk about, you know, a sexual encounter that you had . . . with this room?

The juror responded that he thought "someone could be overwhelmed, but different people handle that differently." Defense counsel didn't object to this exchange.

12

## ii.    Application

¶ 35    We reject Maupin's assertion that the prosecutor made an improper "golden rule" argument. "A true 'golden rule' argument invites jurors to put themselves in the place of the victim and imagine that the defendant wronged them personally, thereby inflaming passions and prejudice." *People v. Randell*, 2012 COA 108, ¶ 92. The prosecutor didn't ask the prospective jurors to place themselves in the victim's shoes as to the charged offense.

¶ 36    Moreover, considered in context, the prosecutor's statement didn't suggest that a testifying victim *would* have difficulty testifying. Indeed, later in this line of questioning, the prosecutor asked jurors what reaction they would have to a testifying victim who expressed little or no emotion. Thus, the purpose of the prosecutor's question was to assess whether jurors might be biased based on a victim's demeanor — whatever that demeanor might be — when testifying. Accordingly, the prosecutor's question wasn't improper.

d.    The Prosecutor Didn't Improperly Elicit a Juror Opinion About the Standard Response of Sexual Assault Victims

¶ 37    Maupin contends that the prosecutor committed misconduct by asking a juror about the "standard" responses of victims of sexual assault because it was an improper attempt "to educate the venire about the expected behavior of sexual assault victims." We disagree.

i.    Additional Facts

¶ 38    The prosecutor continued her voir dire by asking juror M.V. — who was previously identified in camera as a former court-appointed special advocate (CASA)[1] — if she had prior professional experience dealing with victims. M.V. responded yes. The prosecutor then probed, "[D]o you see victims of sexual assault, like a standard of response from them," to which the juror responded, "[a]bsolutely not."

¶ 39    Defense counsel objected and asked to approach. At the bench conference, defense counsel argued that juror M.V.'s

---

[1] A court-appointed special advocate is a trained volunteer who provides independent and objective information to the court about children and youth in specified types of court cases. § 13-91-103(3), C.R.S. 2025.

14

response to the prosecutor's question "sound[ed] like expert testimony" and he didn't want the response "poison[ing] the jury." The court overruled the objection, finding that the prosecutor's question wasn't problematic and that the court couldn't tell a prospective juror "what she can and cannot say."

¶ 40 The prosecutor then asked juror M.V. why she didn't expect a standard response from victims. M.V. said,

> I think trauma was mentioned, and there's a
> very unpredictable nature to trauma. And
> even the same victim, I think, can experience a
> similar situation and have a different reaction.
> And then I think in a case where you're faced
> with — you're in the same room potentially
> with the person who violated you, you know,
> don't know how you're going to react.

### ii. Application

¶ 41 Based on the totality of the circumstances and the context of the prosecutor's questioning, we don't agree with Maupin that the question was improper. The prosecutor asked juror M.V. if she expected a "standard" response from sexual assault victims, and when M.V. said she didn't, the prosecutor asked M.V. to further explain her answer. To the extent that Maupin argues that these

questions were improper because of M.V.'s prior experience as a CASA, we aren't persuaded.

¶ 42 As noted, the parties discussed with juror M.V. her prior CASA experience in camera, outside the presence of other jurors. Maupin doesn't direct us to, nor have we found, anything in the record indicating that the other potential jurors knew she was a former CASA. The prosecutor made only a brief, general reference to juror M.V.'s prior professional experience working with victims before defense counsel objected, she didn't ask M.V. about it again when she resumed her questioning of M.V. after the bench conference, and she didn't ask M.V. whether her answer was based on her prior professional experience. The purpose of these questions was to explore whether juror M.V. held particular attitudes or expectations about how an alleged victim of sexual assault might behave. Similar questions were asked of other potential jurors, who gave similar answers. Thus, we reject Maupin's assertion that the prosecutor's questions to juror M.V. amounted to misconduct.

e.   The Prosecutor Didn't Improperly "Inflame" Jurors' Passions or Denigrate Maupin, His Theory of Defense, or His Counsel

¶ 43   Maupin next contends that the prosecutor committed misconduct during closing argument by denigrating him, his theory of defense, and his counsel.  We again disagree.

i.   Additional Facts

¶ 44   In closing argument, the prosecutor argued as follows:

> [The victim] was drinking heavily.  Heavily drinking.  Shot after shot.  She did cocaine.  You heard she did cocaine.  That's not good. *She's a mother.  The defense made a big point to point that out to you.  Does this make her a bad mother?*  Oh, she was getting home alone.  She didn't have anyone to help her or she wasn't there with a friend to walk her home or anything like that.  She let a stranger into her apartment.  That's bad.  She has a messy house and it hadn't been vacuumed.  Again, that was something that Mr. Maupin wanted you to know.
>
> Do these things mean that a man, Mr. Maupin, can take advantage of her?  No.
>
> Did these things mean that she deserved to be sexually assaulted?  No.
>
> These are things that you can have opinions on but you need to push those aside when you're deliberating because your job is to apply the facts to the law.  And the law, what needs to be proven by [the prosecution], is whether [the victim] was too drunk to appraise the

> nature of her conduct, whether she knew what was going on, and whether he knew it.
>
> *Not this stuff.  This is victim blaming.*  This is embarrassment for her.  These are things that do not matter when you're looking at the elements of the crime.  And . . . you shouldn't be focusing on those because they don't change anything.  *Because she doesn't deserve to be sexually assaulted just because she went out at night alone.*

(Emphasis added.)  Maupin didn't object to this argument.

### ii.    Applicable Law and Standard of Review

¶ 45    A prosecutor has wide latitude during closing argument and may refer to "the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence."  *People v. Rhea*, 2014 COA 60, ¶ 46 (quoting *People v. Walters*, 148 P.3d 331, 334 (Colo. App. 2006)).  However, "[c]ounsel may not misstate or misinterpret the law in closing arguments," *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004), *aff'd*, 119 P.3d 1073 (Colo. 2005), or use arguments "calculated to inflame the passions and prejudices of the jury, denigrate defense counsel, misstate the evidence, or assert a personal opinion as to the credibility of witnesses," *People v. Nardine*, 2016 COA 85, ¶ 35.

18

¶ 46    Prosecutorial misconduct in closing argument that amounts to plain error is rare; it results from flagrant, glaring, or tremendously improper conduct that so "undermine[s] the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Smalley*, 2015 COA 140, ¶ 37 (citation omitted).

### iii.    Application

¶ 47    The prosecutor's argument was rooted in the evidence and attacked Maupin's theory of defense, not him or his counsel. *People v. Herold*, 2024 COA 53, ¶ 97. The victim acknowledged during trial that she drank multiple shots and did cocaine the night of the incident before letting Maupin into her apartment, which she admitted was messy, but not because of Maupin's actions. The victim also testified that she was upset and embarrassed after she fell down in the parking lot because she was supposed to pick up her daughter the next day. The prosecutor thus properly highlighted these facts because the victim's intoxication level related to the victim's ability to consent. Illustrating the weakness of the defendant's defense, so long as it is tied to the evidence, isn't improper. *See People v. Iversen*, 2013 COA 40, ¶ 38.

¶ 48     The prosecutor, by using the term "bad mother," used a rhetorical embellishment to incorporate evidentiary facts such as the victim's messy apartment, cocaine use, and level of intoxication — but she didn't attribute that embellishment to defense counsel. *See People v. Allee*, 77 P.3d 831, 837 (Colo. App. 2003) (noting that a prosecutor may "employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance, so long as [the argument] does not thereby induce the jury to determine guilt on the basis of passion or prejudice"). Rather, the purpose of the embellishment was to remind the jurors that it was their job to apply the relevant evidence to the elements of the offense and not focus on irrelevant evidence.

¶ 49     Viewed in the context of the argument as a whole, the prosecutor's comment that it would be "victim blaming" to consider facts that embarrassed the victim but didn't relate to the elements of the crime was meant to draw the jury's focus away from irrelevant evidence; it wasn't a comment intended to denigrate opposing counsel or Maupin. *See id.* at 836 (concluding that the prosecutor's closing argument, which was intended to draw the jury's focus to relevant evidence rather than to denigrate defense

counsel, wasn't improper). Likewise, the prosecutor's statements about the victim's decisions impressed upon the jurors that they shouldn't use that evidence to make moral judgments about the victim instead of applying the facts to the relevant law.

¶ 50 To the extent that the prosector engaged in minimal embellishment with the statement that defense counsel made a "big point" of highlighting the fact that the victim was a mother, we infer the prosecutor's argument wasn't overly damaging in live argument because defense counsel didn't contemporaneously object to it, *Strock*, 252 P.3d at 1153, and on its own that statement wasn't so flagrant as to deprive Maupin of a fair trial.

¶ 51 Accordingly, we see no misconduct during closing argument amounting to plain error.

### f. Cumulative Prosecutorial Misconduct

¶ 52 Maupin contends that the prosecutor's alleged misconduct constitutes cumulative error. Because we've identified at most one instance of misconduct, we conclude that there was no cumulative error. *People v. Buckner*, 2022 COA 14, ¶ 20 ("If we find multiple instances of prosecutorial misconduct, we 'must carefully review whether the cumulative effect of the prosecutor's statements so

21

prejudiced the jury's verdict as to affect the fundamental fairness' of

the trial." (quoting *Domingo-Gomez*, 125 P.3d at 1053)).

## B.     Sentencing

¶ 53     Maupin next contends that the district court abused its

discretion by imposing the maximum sentence because the court

didn't adequately explain its reasoning or properly consider his

mitigation evidence.

### 1.     Additional Facts

¶ 54     At the sentencing hearing, the prosecutor requested that the

court sentence Maupin to a maximum term of six years in DOC

custody.  The prosecutor argued that the proposed sentence was

appropriate given Maupin's "inability to accept the crime he

committed," his criminal history, his failure to comply with the

terms of probation related to a prior conviction for a sexual offense

(which included offender treatment), and his risk to the community.

¶ 55     Defense counsel asked the court to sentence Maupin to a

probationary sentence, with a two-year, work-release authorized jail

sentence as a condition.  He argued that Maupin had admitted

making a "big mistake," had cooperated with the police, and could

be placed under intensive supervision while being required to

attend treatment as part of a probation sentence. He also noted that Maupin's prior sex offense conviction was over thirteen years old.

¶ 56 Maupin made a statement to the court, in which he said that he was "unaware of just how intoxicated [the victim] was," apologized for his behavior, and asked for the opportunity to participate in therapy.

¶ 57 In its ruling, the court said that it had "taken into consideration all relevant factors as well as the purpose of sentencing." The court noted that it was familiar with the facts of the case because it had presided over the trial, and that it had reviewed the presentence investigation report (PSI), the offense specific evaluation, and Maupin's mitigation information. The court found that probation wasn't appropriate and sentenced Maupin to a term of six years in DOC custody.

2. Standard of Review and Applicable Law

¶ 58 A district court has extremely broad discretion when it imposes a sentence within the statutory range. *People v. Rice*, 2015 COA 168, ¶ 8. A court abuses its discretion when it imposes a sentence that is manifestly arbitrary, unreasonable, or unfair, or is

based on a misapplication of the law. *People v. Herrera*, 2014 COA 20, ¶ 16.

¶ 59    In exercising its sentencing discretion, a district court "must consider the nature and elements of the offense, the character and rehabilitative potential of the offender, any aggravating or mitigating circumstances, and the public interest in safety and deterrence." *People v. Eurioste*, 12 P.3d 847, 850 (Colo. App. 2000). A district court isn't required to discuss every factor relevant to its decision; it only needs to provide a reasonable explanation for its decision. *People v. Torrez*, 2013 COA 37, ¶ 74.

¶ 60    We will uphold a sentence that is (1) within the range required by law; (2) based on appropriate considerations as reflected in the record; and (3) factually supported by the circumstances of the case. *People v. Fuller*, 791 P.2d 702, 708 (Colo. 1990).

### 3.    Analysis

¶ 61    The mandatory sentencing range for a class 4 felony sexual assault is two to six years to life in prison. § 18-3-402(6); § 18-1.3-401(1)(a)(V.5)(A), C.R.S. 2025; § 18-1.3-1004(1)(a), C.R.S. 2025 ("[T]he district court having jurisdiction shall sentence a sex offender to the custody of the department for an indeterminate term

of at least the minimum of the presumptive range specified in section 18-1.3-401 for the level of offense committed and a maximum of the sex offender's natural life."). Although the court sentenced Maupin within the statutory range, Maupin contends that the court abused its discretion by failing to explain why it sentenced him to the maximum term.

¶ 62 We see no abuse of discretion. The court indicated that it had reviewed all of Maupin's mitigation evidence and explicitly acknowledged that the PSI also contained mitigating information. Although the court didn't recount that information in its oral findings, it wasn't required to. *See Torrez*, ¶ 74.

¶ 63 Moreover, the court provided a reasonable explanation for its decision. The court specifically noted that the evidence was clear that the victim was intoxicated — so intoxicated that it would be "obvious to just about anyone that she was not in a condition to do much of anything" given the injuries she suffered after falling on her face. The court also noted that it was Maupin's second felony conviction for a sexual offense, his first one being for attempted sexual assault on a child. The court also referenced the PSI's recommendation that Maupin be sentenced to DOC custody. "That

the trial court finds aggravating factors to be more compelling than any arguably mitigating factors does not constitute an abuse of discretion or indicate that the court failed to consider evidence of mitigation." *People v. Linares-Guzman*, 195 P.3d 1130, 1137 (Colo. App. 2008).

¶ 64 Because we can understand the basis of the court's order, and because Maupin's sentence is within the statutory range, was based on appropriate considerations, and is supported by the circumstances of the case, we won't substitute our judgment for that of the district court's.

## C. SVP Designation

¶ 65 Maupin contends that the district court erred by designating him as an SVP because it misapplied the law and its determination wasn't supported by the evidence.

### 1. Additional Facts

¶ 66 Maupin completed an SVP assessment as part of the presentence investigation process. The evaluator who completed the assessment concluded that Maupin was a stranger to the victim at the time of the offense and he established a relationship with her primarily for the purpose of sexual victimization. The evaluator

26

didn't conclude that Maupin promoted a relationship with the victim primarily for the purpose of sexual victimization.

¶ 67    During sentencing, the district court asked whether either party would like to be heard on the issue of whether Maupin should be designated as an SVP under section 18-3-414.5, C.R.S. 2025. The prosecutor simply asked the court to designate Maupin as an SVP.  Defense counsel acknowledged that the checklist of SVP criteria submitted with the PSI "came out the way it came out" and that he and Maupin both "understood that."  But defense counsel also said he wasn't sure whether he wanted to make an additional record and asked the court, "[I]s there any specific question that you need me to answer for you?"  However, neither the prosecution nor the defense made argument to the court regarding whether the circumstances satisfied the statutory criteria as necessary to designate Maupin as an SVP.

¶ 68    After giving the parties the opportunity to be heard, the court found that the primary issue was "whether or not the victim was a stranger or if the person with whom the defendant established a relationship was done primarily with a purpose of sexual victimization or that relationship was promoted for that purpose."

¶ 69     The court then said:

> [T]he [c]ourt will ultimately find the factors
> have been met on both the stranger factor in
> the sense that there was no preexisting
> relationship with [the victim].  [Maupin] had
> just met her that night at the [local bar] for
> several hours, but that was it.  But even if that
> pulls it outside of the stranger relationship,
> alternatively the [c]ourt finds that the third
> factor is satisfied on the relationship side in
> the sense that at the very least this
> relationship was promoted for the purpose
> of sexual victimization.  And again I go back to
> what the evidence in this case was, is that . . .
> he encountered her in a bar, and I think that
> would have been obvious here.  But then when
> he came back across in their shared
> apartment complex, would have known that
> with her, and yet he remained in her house
> and ultimately engaged in the acts the jury
> found him guilty of.  So for those reasons, the
> [c]ourt will find that the sexually violent
> predator criteria has been met.

### 2.     Preservation

¶ 70     The People assert that Maupin waived his right to challenge the court's SVP designation.  We disagree.

¶ 71     Waiver is the intentional relinquishment of a known right, whereas a forfeiture is the failure to assert a right in a clear and timely manner.  *People v. Rediger*, 2018 CO 32, ¶¶ 39-40; *United States v. Olano*, 507 U.S. 725, 733 (1993).  "We 'do not presume

28

acquiescence in the loss of fundamental constitutional rights, and therefore indulge every reasonable presumption against waiver.'" *Rediger*, ¶ 39 (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984)). Maupin's counsel's exchange with the court regarding whether Maupin should be designated as an SVP was indecisive, but it wasn't an acquiescence to the SVP designation. And because we see no indication in the record that Maupin intended to relinquish his right to object to the SVP designation, we conclude that it was, at most, forfeited. We review a forfeited right under the plain error standard. *Id.* at ¶ 40; *see also People v. Salas*, 2017 COA 63, ¶ 46 (reviewing the defendant's unpreserved challenge to his SVP designation for plain error).

### 3.     Applicable Law and Standard of Review

¶ 72     An SVP is someone who (1) is eighteen years of age or older at the time of the offense; (2) is convicted of a sex offense under section 18-3-402; (3) committed the offense against a victim who was a stranger or was a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) is likely to commit another listed offense under the same or similar circumstances, based on the results of

29

an SVP risk assessment screening instrument. § 18-3-414.5(1)(a); *Allen v. People*, 2013 CO 44, ¶ 6.

¶ 73 Based on the assessment results, the district court must "make specific findings of fact" and enter an order determining whether the defendant is a sexually violent predator. § 18-3-414.5(2); *People v. Lopez*, 2020 COA 41, ¶ 6.

¶ 74 Whether an offender satisfies the statutory criteria to be designated as an SVP is a determination for the district court. *People v. Hunter*, 2013 CO 48, ¶ 7. "In making this ultimate determination, the [district] court relies on both the statute itself, and on the appellate courts' interpretations of the language employed by the General Assembly." *Candelaria v. People*, 2013 CO 47, ¶ 9. We defer to the court's record-supported factual findings, but we review de novo the court's legal conclusions regarding whether a person should be designated as an SVP. *Allen*, ¶ 4.

### 4. Analysis

¶ 75 Maupin challenges only the court's finding that the third criterion of the SVP statute was satisfied. He argues that the court's alternative conclusions that the victim was a stranger to Maupin or that he promoted a relationship with her primarily for

sexual victimization purposes are contrary to the supreme court's holdings in *Hunter* and *People v. Gallegos*, 2013 CO 45.

¶ 76 We conclude that the record doesn't support the court's determination that Maupin was a stranger to the victim and the court's findings are insufficient to support its determination that Maupin promoted his relationship with the victim primarily for sexual victimization purposes.

¶ 77 For purposes of the SVP statute, a victim is a stranger to the offender when, at the time of the offense, the victim is not known to the offender or the offender is not known to the victim. *Hunter*, ¶ 12. And an offender "promotes" a relationship with a victim for purposes of the SVP statute "if, excluding the offender's behavior during the commission of the sexual assault that led to his conviction, [they] otherwise encourage[] a person with whom [they] had a limited relationship to enter into a broader relationship primarily for the purpose of sexual victimization." *Gallegos*, ¶ 14; *accord People v. Valencia*, 257 P.3d 1203, 1207-08 (Colo. App. 2011).

¶ 78 General findings may suffice to support a court's SVP designation if the designation is otherwise supported by the record.

*See People v. Tuffo*, 209 P.3d 1226, 1232 (Colo. App. 2009). The court's general findings in this instance, however, aren't sufficient to support its SVP designation.

¶ 79 The record demonstrates that Maupin and the victim were at least minimally known to each other at the time of the offense. So the court's determination that Maupin should be designated an SVP based on the "stranger" criterion of the statute is unsupported.

¶ 80 And the sum of the court's findings supporting its determination that Maupin promoted a relationship with the victim for sexual victimization purposes was that he encountered the victim in a bar, saw her again in their shared apartment complex, and then remained in her house before assaulting her. These findings are insufficient to explain how Maupin's behaviors, other than those constituting the assault itself, expanded his limited relationship with the victim for the purpose of assaulting her. *See Gallegos*, ¶ 14. Accordingly, the case is remanded for the district court to make additional, specific findings regarding whether Maupin meets the criteria to be designated as an SVP. *See Tuffo*, 209 P.3d at 1232.

## III. Disposition

¶ 81    The conviction is affirmed. The SVP designation is reversed and the case is remanded for the district court to make specific findings regarding whether Maupin should be designated as an SVP under section 18-3-414.5(2). Maupin's sentence is otherwise affirmed.

JUDGE J. JONES and JUDGE KUHN concur.